CHATMAN ET AL., APPELLANTS, *v.*
DAY, D.B.A. PEACH TREE SOUTH, INC.,
APPELLEE.

(No. 7522—Decided April 15, 1982.)

*Mr. Alex V. DeMarco,* for appellants.
*Mr. Earl Day, pro se.*

MCBRIDE, J. The second assignment presents the question of the liability of a principal officer of a corporation who continues to conduct business and to create obligations after a corporate charter has been canceled.

The complaint in the municipal court alleged a simple claim for damages for failure to substantially perform in a workmanlike manner the construction of a garage on the premises of the plaintiffs. The action was brought and the defendant served as Earl Day, individually, d.b.a. Peach Tree South, Inc. In response, a general denial was filed by the defendant, individually. Included in the same answer is a general denial on behalf of Peach Tree South, Inc. The corporate answer was an entry of appearance though no relief was requested as against the corporation which never was made a party.

The case was heard by a referee and judgment awarded for $1,826.73 against the corporation. The claim against Earl Day was dismissed. The plaintiffs appealed. No action on the appeal was undertaken by the corporation and, right or wrong, that portion of the judgment is not involved here. The appellee failed to file a brief and did not appear for oral argument.

Appellants' second assignment of error is the failure of the trial court to award judgment against the defendant, Earl Day, in his individual capacity.

Peach Tree South, Inc., was a family corporation owned by Earl Day and his wife.

The plaintiffs responded to advertising and phoned Country Squire Builders regarding construction of the garage. Earl Day appeared at the request of Dave Phelps of Country Squire Builders; he estimated the job and obtained a written contract to construct the garage for $5,421. The contract was on the printed form of Peach Tree South, Inc. It was signed by the plaintiffs as owners and by Earl Day as "company representative" and as the "contractor" accepting the contract. The acceptance fails to disclose any capacity of Earl Day other than as an individual. Earl Day appears to have sublet the performance of the contract back to Dave Phelps of Country Squire Builders. Earl Day testified that he acted as an officer of Peach Tree South, Inc. on the contract. Two payments amounting to $4,100 were sent by check to Peach Tree South, Inc. The first was endorsed in the corporate name by "Earl Day, Pres." and the second was not endorsed but marked "transfer to CC #613550." A cement slab for the garage was improperly laid and was removed by plaintiffs who completed the construction of the garage at their own expense.

The written contract was dated August 5, 1980. As of May 30, 1980, Peach Tree South, Inc.'s Charter No. 398960 was not in good standing with the

Secretary of State for failure to pay the franchise tax.

The referee found that the contract was not performed in a suitable and workmanlike manner and that plaintiffs' removal of the slab and completion of the garage were reasonable and necessary. Also, that while the pleadings were confusing, both the individual and the corporation were defendants. He found the corporation to be one "de facto," that the termination by the Secretary of State was of no significance and that plaintiffs had no claim against Earl Day, individually.

Appellants rely in their brief upon R.C. 5733.20 which authorizes the Secretary of State to cancel the articles of incorporation of a corporation upon failure to report or pay taxes. As indicated, the appellee filed no responsive brief.

On the brief transcript of evidence, we accept the finding that Earl Day intended to act and sign on behalf of the lapsed corporation although this subject did not enter into the negotiations. The two checks made out to the corporation indicate that plaintiffs were led to believe they were dealing with a corporation.

In considering the right of Earl Day, as president, to do business as agent on behalf of the corporation and thereby shield himself from personal responsibility, it is significant that earlier cases involve either third parties or individuals who received a consideration from the lapsed corporation and sought to avoid liability or to obtain a preference. The rationale of such cases is limited to the language of R.C. 5733.20 which was construed to be limited to the collection of taxes because it is a part of the chapter on franchise taxes.

No consideration has been given to the provisions of the general Corporation Act which, independent of R.C. 5733.20 and its tax purposes, specifically provide that when the articles of a corporation have been canceled, it "shall cease to carry on business and shall do only such acts as are required to wind up its affairs * * *."

R.C. 1701.88(A) provides:

"When a corporation is dissolved voluntarily or when the articles of a corporation have been canceled or when the period of existence of the corporation specified in its articles has expired, the corporation shall cease to carry on business and shall do only such acts as are required to wind up its affairs, but for such purpose it shall continue as a corporation."

Under this section of the Corporation Act, the authority granted to a corporation by law is removed by the legislature for all purposes except such as are necessary to wind up its affairs. The language is explicit. The loss of corporate power and privileges, which "cease" upon nonpayment of taxes as provided elsewhere in the chapter on taxation, is restated in express language in R.C. 1701.88(A) as a general proscription, not restricted by R.C. 5733.20, to cease doing business and to do only such acts as are required to wind up its affairs. The firm proscription in the Corporation Act, accompanied by authority for only a limited purpose, indicates an intention of the legislature to withdraw the power of such corporation and not to tolerate the use of lapsed corporations by individuals as a shield for continuing business under the name of a dead, defunct and possibly insolvent corporation.

Our conclusion is that under R.C. 1701.88(A) of the general Corporation Act, when the articles of a corporation are canceled, whether by the Secretary of State or otherwise, the authority of the corporation to do business ceases and after such termination officers who carry on new business do so as individuals, lose the protection of the Corporation Act, and are personally responsible for such obligations as they incur. By direct action of the sovereign, authority of officers to conduct new business on behalf of such

corporations terminates as effectively as the decease of an individual principal.

This finding is based on the general rule that upon the corporation's death, those officers, directors or shareholders who continue to engage in corporate business other than winding up the affairs of the company will be held personally liable for such activity. See, generally, 16A Fletcher, Cyclopedia of Private Corporations (Rev. Ed. 1979) 293, Dissolution and Winding Up, Section 8117.

This problem has concerned the courts for many years. The Ohio cases are distinguished by individual facts or a rationale limited to the application of R.C. 5733.20 and related tax statutes, which may not be construed to negative the general provisions of the corporation chapter.

In 1922 a municipal court held that when a charter is forfeited for failure to report or pay the annual franchise tax, the corporation was not responsible and a personal judgment may be rendered against officers who carried on business in the name of the defunct corporation. *Package Sales Co.* v. *Cincinnati Orchards Co.* (1922), 24 Ohio N.P. (N.S.) 313. *Eversman* v. *Ray Shipman Co.* (1926), 115 Ohio St. 269, involved parties who loaned money to a corporation, the issue being drawn between general creditors and a mechanics' lienholder who furnished material after articles of the corporation had been canceled for nonpayment of a franchise tax. The issue involved the tax statutes in R.C. Chapter 5733 which were considered *in pari materia* and limited to the purpose of enforcing the payment of taxes and filing of annual reports. The court expressly did not determine (at page 277) whether the legislature might confer upon the Secretary of State the power to generally terminate the powers of a corporation such as appears in R.C. 1701.88 (A). In *I. J. Goldstein Co.* v. *Mitchell* (1921), 14 Ohio App. 231, the court reached the same conclusion.

Later in *Sweeny* v. *Keystone Driller Co.* (1930), 122 Ohio St. 16, a narrow issue arose from a claim by a chattel mortgage holder against a receiver for a corporation whose articles had been canceled by the Secretary of State. The issue turned on the appropriate county of residence in which to file a chattel mortgage after the articles of incorporation were canceled by the Secretary of State. The court followed *Eversman, supra,* holding that the power granted in the taxing statutes to the Secretary of State was designed to facilitate the filing of reports and collection of fees and that the tax statute did not confer the power to forfeit corporate privileges to continue in business.

We have not located or been referred to any recent Ohio case that determines the effect of the language in the Corporation Act in R.C. 1701.88 which implements R.C. 5733.20. The provisions in the Corporation Act eliminate the rationale of *Eversman* and *Sweeny, supra,* in the instant case. Since no constitutional issue is raised, R.C. 1701.88 is presumed to be valid.

The responsibility of an admittedly lapsed corporation and its officers for new business carried on after the charter was terminated has been fraught in uncertainties which are usually resolved by facts peculiar to each case, and more particularly, by the language of the corporation statutes of each state. In the majority of the states, and as in *Package Sales Co.* v. *Cincinnati Orchards Co., supra,* participants in a transaction after forfeiture of a corporate charter are individually responsible. 19 American Jurisprudence 2d 1000, Section 1650. In any event, rationalizations based upon public policy, de facto activities, immunity from collateral attack and the like are founded upon the existence of a corporate entity by force of legislative enactment. When the enactment creating the corporation also provides for its termination and denies it the right to do business other than to liquidate, there is no necessity in a case such as we have here to rely upon other than

statutory enactments unless the facts necessitate such rationalization. Estoppel may be justified against one who obtained corporate assets after forfeiture, but no rationalization will justify an officer or excuse his personal responsibility when he has been stripped of the authority by the sovereign that gave him such power. Such is the effect of R.C. 1701.88(A). To conclude otherwise is to encourage fraud upon the public by those who know or should know that the legislature canceled their authority to act as agent for the corporation. The situation is the same as that of a promoter who fails to bring a corporation into existence.

The second assignment of error is sustained.

The first assignment claims error in determining the "amount of damages to be awarded."

As indicated, the only award for damages was against Peach Tree South, Inc. That judgment is not involved in this appeal. The language of the assignment — "to be awarded" — is prospective in nature since there was no determination of damages as between plaintiffs and the individual defendant. Appellants assume that they may be the same and seek a ruling in advance of a new trial which is required as to Earl Day, individually. However, from the record we are unable to find prejudicial error in the amount reached by the referee.

The first assignment of error is overruled.

Since the second assignment was sustained, the judgment of dismissal of the case against Earl Day will be reversed and the cause remanded for new trial.

*Judgment reversed.*

KERNS, P.J., and BROGAN, J., concur.

McBRIDE, J., retired, of the Second Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.