**ELEANORE BUILDERS, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 1:91CV0663.**

United States District Court,
N.D. Ohio, E.D.

April 30, 1993.

Kenneth J. Freeman, Freeman and Kadish, Cleveland, OH, for plaintiff.

Henry J. Riordan, W. Stephen Muldraw, Dept. of Justice Tax Div., Washington, DC, for defendant.

## MEMORANDUM AND ORDER

WHITE, District Judge.

This is an action for the refund of income taxes brought under 26 U.S.C. §§ 7421 and 7422. The Plaintiff, Eleanore Builders was an Ohio Corporation whose state charter was cancelled by the Ohio Department of Taxation on May 14, 1982 for failure to pay franchise taxes. Plaintiff alleges that the Corporation became a partnership for tax purposes when its charter was revoked. However, Corporate Tax Returns were filed from 1974, to 1989. Subsequently, Eleanore Builders filed Partnership Returns for 1982, 1983 and 1985 through 1988. On July 1, 1990 a penalty was assessed for late filing of the Partnership Returns for 1982 through 1988. The penalty of $3505.30 was paid. Plaintiff claims it overpaid its taxes for the years mentioned and is entitled to recover those sums. The action was placed on the expedited track and the parties agreed that a trial would be unnecessary. As a result the parties have filed cross-motions for summary judgment. The issues is whether Eleanore Builders became a partnership for federal income tax purposes when its state charter was cancelled by the Ohio Department of Taxation.

The following facts are undisputed. Eleanore Builders, Inc. (hereinafter Builders) was incorporated on August 21, 1954 and its principal office was located in Euclid, Ohio. Builders was engaged in the construction and ownership of commercial real estate. The initial officers of Builders were Frank Kapel (President), Richard C. Hoge (Vice President), and Charles J. Seifert (Secre-

tary/Treasurer). These individuals were also directors of Builders.

Of the initial offering of one-hundred (100) shares of Builders' stock, Frank Kapel purchased eighty (80) shares and Richard Hoge and Charles Seifert each purchased ten (10) shares. On October 8, 1955, Richard Hoge resigned as Vice–President and a director of Builders, transferred his ten (10) shares of stock back to Builders and Milan Kapel (Frank Kapel's brother) became Vice–President and a director and obtained ten (10) shares of Builders' stock. There are no restrictions on the transferability of the shareholders' interests in Builders.

On April 30, 1957, Milan Kapel was elected President of Builders, Frank Kapel was elected Vice–President and Treasurer and Sylvia Delligatti was elected Secretary. Charles Seifert also resigned as a director on that date and transferred his ten (10) shares back to Builders. Milan Kapel obtained Mr. Seifert's ten (10) shares of Builders' stock.

According to the Plaintiff, no shareholders' or directors' meetings were held after January 1, 1978. In 1970, Frank Kapel died and his eighty (80) shares of Builders' stock were transferred to his estate and then to his wife Stephanie Kapel. Frank Kapel's death did not cause a dissolution of Builders. On November 24, 1971, Eleanore Kapel (Milan Kapel's wife) was elected Secretary of Builders and in 1972 she also became a director. On May 14, 1982, Builder's charter was cancelled by the Ohio Department of Taxation for its failure to pay franchise taxes. At the time of said cancellation, the two stockholders of Builders were Stephanie Kapel (80%) and Milan Kapel (20%). Following the May 14, 1982 cancellation of Builders' charter, the operations and management of Builders remained the same. Following the cancellation of the charter, no partnership agreement was ever executed, and, in fact, at no time between 1982 and 1988 did the owners of Builders ever express or otherwise manifest an intention to change the organizational form of Builders to a partnership. During the years 1982 through 1988, Builders had a business objective (i.e., an objective to carry on business and divide the gains therefrom).

After the cancellation of the corporate charter, Builders continued to hold itself out to the public as a corporation. As set forth in the Forms 1120, from 1983 through 1988, Builders had assets in excess of $400,000.00. Also, from 1982 through 1985, Builders owned and maintained buildings, made leasehold improvements, and collected rents. In 1986, 1987 and 1988, Builders had a personal holding company which collected rent, recognized capital gains and earned significant interest income. The Form 1120 for 1988 reflects $528,103 in corporate assets and $124,075 in interest income of the personal holding company.

According to the 1983 Form 1120, sometime in 1983, Builders sold real property located at 25000 Euclid Avenue, Euclid, Ohio, and recognized a gain of $232,696. Checks written by Builders describe Builders as a corporation by using the name "Eleanore Builders, Inc." The authorized signatories on the Builders' bank account from 1982 through 1988 were Milan Kapel, Sr., Eleanore Kapel, Marianne Kapel, and Milan Kapel, Jr. From 1954 until his death on October 16, 1984, Milan Kapel, controlled the management and day-to-day operations of Builders and had continuing exclusive authority to make the management decisions of Builders. Milan Kapel's death did not cause a dissolution of Builders. Following Milan Kapel's death, Eleanore Kapel, acting as President of Builders, had continuing exclusive authority to make the management decisions of Builders and the operations and management of Builders did not change. Following Milan Kapel's death, Stephanie Kapel remained 80% shareholder of Builders and the Estate of Milan Kapel and/or Eleanore Kapel was the owner of the balance of the 20% interest in Builders. According to the Affidavit of Eleanore Kapel (Kapel Affidavit), following Milan Kapel's death, she discovered that Builders had not filed corporate income tax returns for any year after 1973. On October 29, 1986, Eleanore Kapel, acting as President of Builders, executed an Agreement of Sale of Real Estate, thereby selling the real property located at 7450 North Center Street, Mentor, Ohio, for $195,000.00. On February 27, 1987, Eleanore Kapel signed an Agreement relating to

the sale of real property on behalf of Builders, as President. Said Agreement states, inter alia, that Builders is an Ohio Corporation "in good standing in accordance with the laws of the State of Ohio as a corporation." Builders currently holds title to land in Madison, Ohio, which Plaintiff alleges to be worth $210,000. This action was brought, in part, to prevent the sale of that property by the IRS.

According to the Kapel Affidavit, between November of 1984 and June of 1987, she engaged the services of a certified public accountant to prepare all the delinquent corporate income tax returns of Builders. That accountant did not perform the requested services and Eleanore Kapel retained a second accountant who completed all the delinquent returns before December 31, 1988. On or about January 17, 1989, Builders filed U.S. Corporate Income Tax Returns (IRS Forms 1120), for the calendar years 1982 through 1987. Said corporate tax returns were signed and filed by Eleanore Kapel as President of Builders. Apparently, on December 8, 1989, Eleanore Kapel learned that the Articles of Incorporation had been cancelled by the State of Ohio. It was not until December 29, 1989, that Builders claimed to be a partnership and, hence, exempt from corporate income taxes. Builders made such a claim by filing amended corporate returns (IRS Forms 1120X) and U.S. Partnership Returns of Income (IRS Forms 1065) for the years 1982 through 1988.

Builders' unpaid corporate income tax liabilities, with respect to periods initially in issue in the Complaint, are as follows:

| Period | Unpaid Assessed Balance Due |
|--------|------------------------------|
| 1982 | $ 0.00 |
| 1983 | $31,888.83 |
| 1985 | $ 6,027.44 |
| 1986 | $16,176.53 |
| 1987 | $ 1,606.08 |
| 1988 | $19,469.94 |

Plaintiff's Complaint initially sought recovery of the following amounts paid with respect to the following periods:

| Period | Amount Claimed by Plaintiff | Count in Complaint |
|--------|------------------------------|--------------------|
| 1982 | $ 726.00 | III |
| 1983 | $71,257.00 | IV |
| 1985 | $14,511.00 | V |
| 1986 | $43,116.00 | VI |
| 1987 | $ 5,736.00 | VII |
| 1988 | $23,491.00 | VIII |

On November 9, 1992, the Court entered an Agreed Order whereby Plaintiff dismissed, without prejudice, those aspects of the Complaint that relate to the requests for refunds of federal taxes for the years 1983, 1985, 1986, 1987 and 1988. Thus, only the claim for refund with respect to the 1982 period remains in this suit. However, Plaintiff has indicated that a determination by the Court that Builders did not become a partnership after the cancellation of the charter in 1982, as alleged by Plaintiff, would act to resolve that issue for the later years.

■ The Plaintiff contends that because its charter was cancelled it became a partnership and that it is entitled to a refund of its tax payments. The definition of a corporation includes associations, joint-stock companies and insurance companies. 26 C.F.R. § 301.7701–1(c). Whether a corporation has been formed is a question of state law. *United States v. Young,* 604 F.Supp. 164, 170 (ND Okla.1984). But federal law determines whether the corporate entity should be disregarded for federal tax purposes. *Id.* 26 CFR 301.7701–1(b) provides:

The Internal Revenue Code prescribes certain categories, or classes, into which various organizations fall for purposes of taxation. These categories, or classes, include associations (which are taxable as corporations), partnerships, and trusts. The tests, or standards, which are to be applied in determining the classification in which an organization belongs (whether it is an association, a partnership, a trust, or

other taxable entity) are determined under the Internal Revenue Code. Sections 301.-7701–2 301.7701–4 set forth these tests, or standards, which are to be applied in determining whether an organization is (1) an association (see @ 301.7701–2), (2) a partnership (see @ 301.7701–3), or (3) a trust (see @ 301.7701.4).

The Treasury Regulations set forth a test for determining whether an organization is taxable as a corporation. 26 CFR § 301.7701–2(a) provides:

> Characteristics of corporations. (1) The term "association" refers to an organization whose characteristics require it to be classified for purposes of taxation as a corporation rather than as another type of organization such as a partnership or a trust. There are a number of major characteristics ordinarily found in a pure corporation which, taken together, distinguish it from other organizations. These are: (i) Associates, (ii) an objective to carry on business and divide the gains therefrom, (iii) continuity of life, (iv) centralization of management, (v) liability for corporate debts limited to corporate property, and (vi) free transferability of interests. Whether a particular organization is to be classified as an association must be determined by taking into account the presence or absence of each of these corporate characteristics. The presence or absence of these characteristics will depend upon the facts in each individual case. In addition to the major characteristics set forth in this subparagraph other factors may be found in some cases which may be significant in classifying an organization as an association, partnership, or a trust. An organization will be treated as an association if the corporate characteristics are such that the organization more nearly resembles a corporation than a partnership or trust. See *Morrissey et al. v. Commissioner,* (1935) 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263. Centralization of management, continuity of life, free transferability of interests and limited liability are key characteristics. 26 CFR § 301.7701–2(a)(2).

It has been held that a corporation is subject to federal corporate tax as long as it continues to do business in a corporate manner even though its corporate charter has been revoked by the state. *Messer v. C.I.R.,* 438 F.2d 774, 778 (3rd Cir.1971); *United States v. Young,* 604 F.Supp. at 170. The Court in *Outlaw v. United States,* 494 F.2d 1376, 204 Ct.Cl. 152 (1974) stated:

> [3] We have already pointed out that the existence of associates and a business objective are the only two characteristics required by the Regulations before an organization will be considered an association. Consequently, if the organization has two or more of the four remaining corporate characteristics, making a total of four or more of the six listed in the Regulations, it will be treated as an association taxable as a corporation.

*Id.* at 1385.

■ Eleanore Builders had associates and a business objective. From 1982 to 1988 it had two shareholders, Milan Kapel (after his death the Estate of Milan Kapel and/or Eleanore Kapel) and Stephanie Kapel. The Company had an objective to carry on business and divide the gains received therefrom.

26 CFR 301.7701–2(c) states that an organization has centralized management if any person has continuing exclusive authority to make the management decisions necessary to the conduct of the business for which the organization was formed. The facts show that Eleanore Builders had centralized management. From 1954 until his death in 1984, Milan Kapel had continuing exclusive authority to make management decisions.

An organization has continuity of life if the death, insanity, bankruptcy, retirement, resignation or expulsion of any member will not cause dissolution of the organization. The President and 20% shareholder of Eleanore Builders died in 1984. However, the operations of the Company did not change.

The third characteristic necessary for finding Eleanore Builders to be an association is free transferability of interests. 26 CFR 301.7701–2(e) describes this term as follows:

(1) An organization has the corporate characteristic of free transferability of interests if each of its members or those members owning substantially all of the interests in the organization have the power, without the consent of the other members, to substitute for themselves in the same organization a person who is not a member of the organization. . . .

In this case, there are no restrictions upon the transferability of the shareholders' interests in the Corporation. Shares of the Company's stock were freely transferred throughout the life of the Company. After cancellation of the corporate charter and after Milan Kapel's death, Kapel's interest in the Company was freely transferred to his estate and then to Eleanore Kapel.

■ Limited liability, the final criteria for determining whether a corporation exists for federal tax purposes occurs where

(1) An organization has the characteristic of limited liability if under local law there is no member who is personally liable for the debts of or claims against the organization. Personal liability means that a creditor of an organization may seek personal satisfaction from a member of the organization to the extent that the assets of such organization are insufficient to satisfy the creditor's claim. * * *.

26 CFR § 301,6601–2(d).

In Ohio a corporation whose charter is terminated for failure to pay franchise taxes continues to be a corporation. *Eversman v. Ray Shipman Co.*, 115 Ohio St. 269, 152 N.E. 643 (1926). It has been further held that a shareholder of such corporation still has limited liability. *Columbia Real Estate Title Insurance Co. v. Columbia Title Agency, Inc.*, 11 Ohio App.3d 284, 465 N.E.2d 468 (1983). *Monteith v. Kline*, 1992 WL 150281 (Ohio App.1992); *Carlin & Carlin v. Exec–U–Type, Inc.*, 1987 WL 5648 (Ohio App. 1987). Thus, the shareholders of Eleanore Builders were not liable for transactions made on behalf of the Company. Eleanore Kapel signed agreements to sell Company property as "President" of the Company and checks were signed that indicated Eleanore Builders was a corporation. Therefore, the limited liability requirement is satisfied. The conclusion is that Eleanore Builders remained a corporation for federal tax purposes after its charter was revoked by the Ohio Department of Taxation.

Accordingly, the Plaintiff's motion for summary judgment is denied. The defendant's motion for summary judgment is granted. Judgment is for the defendant.

IT IS SO ORDERED.