**Jack SHAW, Trustee, Plaintiff,**

v.

**Timothy JENKINS, dba Dan–Ray Construction Co., Inc., et al., Defendants.**

**No. 2:99–CV–597.**

United States District Court, S.D. Ohio, Eastern Division.

March 21, 2001.

## OPINION AND ORDER

KING, United States Magistrate Judge.

Plaintiff brings this action under the Labor–Management Relations Act of 1947, 29 U.S.C. § 185, as well as the Employee Retirement Income Security Act of 1974 ["ERISA"], 29 U.S.C. § 1132 *et seq.*, seeking recovery of amounts allegedly due certain employee benefit plans. Upon the consent of the parties, 28 U.S.C. § 636(c), this matter is before the Court on plaintiff's motion for summary judgment.

## I. Background

Plaintiff is a trustee of the Ohio Laborers' Fringe Benefit Programs ["Programs"], which is an association of four trust funds: the labor management cooperative trust known as Ohio Laborers' District Council–Ohio Contractors Association Cooperation and Education Trust, and three employee benefit trust funds known as Ohio Laborers' District Council–Ohio Contractors' Association Insurance Fund, Ohio Laborers' Training and Upgrading Fund, Laborers' District Council, and Contractors' Pension Fund of Ohio ["the funds"]. (*Complaint,* ¶ 2). Plaintiff names as defendants Timothy and Paul Jenkins, alleged to be doing business as Dan–Ray Construction Company, Inc. ["Dan–Ray"]. The business itself, which is located in Cleveland, Ohio, *Id.,* ¶ 3, has not been named as a defendant. It is alleged that, on December 15, 1992, the Ohio Secretary of State canceled Dan–Ray's corporate charter. *Id.* Plaintiff seeks recovery of unpaid contributions to the funds, as well as interest, liquidated damages and attorneys fees against only defendant Paul Jenkins.

## II. Discussion

### A. Standard

Fed. R. Civ. R. 56(c) provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact...." In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505.

### B. Application

Plaintiff contends that summary judgment is appropriate in regard to the claim relating to the period September 1998 to October 1999 and the claim relating to

employee Anthony Pink. In support of his motion for summary judgment, plaintiff provides evidence demonstrating that the Ohio Secretary of State canceled Dan–Ray's corporate charter on December 15, 1992. *Exhibit A Attached to Plaintiff's Motion for Summary Judgment.* Plaintiff also attaches an agreement signed by Paul Jenkins on October 15, 1985 in his capacity as president of Dan–Ray, *Exhibit B Attached to Plaintiff's Motion for Summary Judgment,* and two agreements signed by Timothy Jenkins on June 23, 1994, *Exhibits B, C Attached to Plaintiff's Motion for Summary Judgment,* which agreements purport to obligate Dan–Ray to contribute to the funds on behalf of certain employees. Plaintiff also attaches documentation setting forth the principal amounts of the unpaid contributions, the employees on whose behalf the contributions were not paid, the dates of the unpaid contributions, the interest that has accrued on the unpaid contributions, and the amount of liquidated damages for the principal amounts of the unpaid contributions. *Exhibits E, F, H Attached to Plaintiff's Motion for Summary Judgment.*

Defendants contend that plaintiff has failed to meet his burden of proof because plaintiff failed to present evidence that defendants Paul and Timothy Jenkins were personally obligated to contribute to the funds. Defendants also maintain that plaintiff failed to identify, with the exception of Anthony Pink, the employees on whose accounts contributions were left unpaid, the dates of the contributions that defendants allegedly failed to pay, and the manner in which the unpaid contributions were calculated. Furthermore, defendants argue that contributions were not required in regard to Anthony Pink, the one employee specifically named by plaintiff, because he was employed as a security guard during the period from June 1989 to November 1990, not as a laborer.

Section 502 of ERISA, 29 U.S.C. § 1132, creates a cause of action to enforce employer contributions to employee benefit funds, and requires an award of interest and the greater of liquidated damages or double interest as well as attorneys fees and costs.[1] Moreover, the collective bargaining agreements documented by plaintiff provide for liquidated damages of 10% of any late principle contributions, plus interest in the amount of 1% per month on late contributions.

### 1. Defendant Paul Jenkins' Personal Liability for the Unpaid Contributions

In their memorandum *contra* plaintiff's motion for summary judgment, defendants complain that plaintiff has not established that defendants Paul and Timothy Jenkins were personally obligated to contribute to the funds. Plaintiff has "attached signed

---

1. Section 502 provides:
 (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
 (A) the unpaid contributions,
 (B) interest on the unpaid contributions,
 (C) an amount equal to the greater of—
 (I) interest on the unpaid contributions, or
 (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
 (D) reasonable attorney fees and costs of the action, to be paid by the defendant, and
 (E) such other legal or equitable relief as the court deems appropriate.
 For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.
 29 U.S.C. § 1132(g)(2).

agreements, all of which incorporate the Ohio Highway–Heavy–Municipal and Utility Contract between the Ohio Contractors Association and the Laborers' District Council of Ohio, and all of which require contributions to the Plaintiff Funds." *Plaintiff's Memorandum in Reply to Defendants' Memorandum contra Plaintiff's Motion for Summary Judgment,* at 4. However, the agreements presented by plaintiff expressly state that the parties to the agreements were local unions affiliated with the Laborer's District Council of Ohio, AFL–CIO ["Union"] and Dan–Ray. *Exhibits B, C, and D attached to Plaintiffs' Motion for Summary Judgment.* In 1985, defendant Paul Jenkins—the only defendant against whom plaintiff currently seeks summary judgment—signed one such agreement as the president of Dan–Ray. *Exhibit B attached to Plaintiff's Motion for Summary Judgment.* In 1994, Timothy Jenkins signed the other two collective bargaining agreements without expressly stating his capacity. *Exhibits C, D attached to Plaintiff's Motion for Summary Judgment.* Plaintiff also presents evidence that Dan–Ray's corporate status was canceled by the Secretary of State on December 15, 1992. *Exhibit A attached to Plaintiff's Motion for Summary Judgment.* The Court must determine whether plaintiff may hold defendant Paul Jenkins personally liable to the funds for the unpaid contributions.

Under ERISA, the "term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). The term "person," as used in § 1002(5), "means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9).

In *Eversman v. Ray Shipman Co.,* 115 Ohio St. 269, 152 N.E. 643 (1926), the Ohio Supreme Court concluded that transactions of a corporation occurring after the cancellation of its corporate charter are not void.[2] However, the *Eversman* decision was based on an analysis of certain tax statutes and pre-dated Ohio's Corporation Act, which provides, in pertinent part:

> When a corporation is dissolved voluntarily or when the articles of a corporation have been canceled or when the period of existence of the corporation specified in its articles has expired, the corporation shall cease to carry on business and shall do only such acts as are required to wind up its affairs, but for such purpose it shall continue as a corporation.

O.R.C. § 1701.88(A). "Under this section of the Corporation Act, the authority granted to a corporation by law is removed by the legislature for all purposes except such as are necessary to wind up its affairs." *Chatman v. Day,* 7 Ohio App.3d 281, 282, 455 N.E.2d 672 (Montgomery Cy.1982). Thus, where a corporate charter is canceled "for non-payment of franchise taxes, the corporation does not cease to exist but remains a *de jure* corporation at least for the limited purpose of winding

---

**2.** Although courts have interpreted *Eversman* as holding that "cancellation of a corporate charter pursuant to G.C. 5509 (the predecessor to O.R.C. § 5733.20) does not have the effect of terminating all corporate powers of the corporation," *Columbia Real Estate Title Ins. Co. v. Columbia Title Agency, Inc.,* 11 Ohio App.3d 284, 286, 465 N.E.2d 468 (Franklin Cy.1983), this Court does not read *Eversman* as limiting the authority of a corporation to only those acts necessary to wind up its affairs. *See also Eleanore Builders, Inc. v. United States,* 826 F.Supp. 1111, 1115 (N.D.Ohio 1993).

up its corporate affairs...." *Columbia Real Estate Title Ins. Co. v. Columbia Title Agency, Inc.*, 11 Ohio App.3d 284, 465 N.E.2d 468, syllabus (Franklin Cy.1983). *See also Thomas v. Price*, 133 Ohio App.3d 585, 589, 729 N.E.2d 427 (Hamilton Cy.1999); *Monteith v. Kline*, No. 15374, 1992 WL 150281, at *2 (Summit Cy. Ct. App. June 24, 1992). "The firm proscription in the Corporation Act, accompanied by authority for only a limited purpose, indicates an intention of the legislature to withdraw the power of such corporation and not to tolerate the use of lapsed corporations by individuals as a shield for continuing business...." *Chatman*, 7 Ohio App.3d at 282, 455 N.E.2d 672.

> [U]nder R.C. 1701.88(A) of the general Corporation Act, when the articles of a corporation are canceled, whether by the Secretary of State or otherwise, the authority of the corporation to do business ceases and after such termination officers who carry on new business do so as individuals, lose the protection of the Corporation Act, and are personally responsible for such obligations as they incur.

*Id. See also Sheehan v. McRedmond*, No. 73358, 1998 WL 774983, at *2 (Cuyahoga Cy. Ct.App. Nov. 5, 1998); *Consolidated Freightways Corp. v. Allred*, No. 91–AP–747, 1991 WL 268743, at *1 (Franklin Cy. Ct.App. Dec. 10, 1991).

■ The allegedly unpaid contributions relating to Anthony Pink were for the period June 1989 to November 1990. The agreement covering this time period was signed by Paul Jenkins, in his capacity as president of the corporation, on October 15, 1985. *Exhibit B attached to Plaintiff's Motion for Summary Judgment.* Given that Dan–Ray's corporate charter was not canceled until December 15, 1992, *Exhibit A attached to Plaintiff's Motion for Summary Judgment,* and defendant Paul Jenkins appears to have been acting on behalf of the corporation when he signed the agreement obligating it to contribute to the funds, the Court concludes that the Union and the corporation were parties to the 1985 collective bargaining agreement. Because 29 U.S.C. § 1145 "applies only to an employer who is 'obligated to make contributions' to a multi-employer plan-and the individual defendant had never assumed any such obligation himself[,]" *Scarbrough v. Perez*, 870 F.2d 1079, 1083 (6th Cir.1989), the Court concludes that plaintiff's motion for summary judgment against defendant Paul Jenkins lacks merit in regard to the unpaid contributions concerning Anthony Pink.

In regard to the allegedly unpaid contributions for the period September 1998 to October 1999, the Court notes that plaintiff has presented uncontroverted evidence that Dan–Ray's corporate charter had been canceled by the Secretary of State by that time. *Exhibit A Attached to Plaintiff's Motion for Summary Judgment.* Thus, after December 15, 1992, Dan–Ray continued to exist only for the purpose of winding up its affairs. *See* O.R.C. § 1701.88(A).

■ "[W]hether [a] contract was part of the process of winding up is a different issue than whether the corporation continued to exist." *Monteith*, 1992 WL 15374, at *2. " '[W]inding up' is the process of settling the accounts and liquidating the assets of a partnership or corporation, for the purpose of making distribution of net assets to shareholders or partners and dissolving the concern." *Consolidated Freightways Corp. v. Allred*, No. 91–AP–747, 1991 WL 268743, at *1 (Franklin Cy. Dec. 10, 1991). Plaintiff has presented as evidence two agreements which were signed by Timothy Jenkins on June 23, 1994, and which name the Union and Dan–Ray as parties. *Exhibits C, D Attached to Plaintiff's Motion for Summary Judg-*

*ment.* Entering into new contracts, *i.e.*, the 1994 agreements, is not an act of winding up corporate affairs. Thus, the officers of the corporation "who carry on new business do so as individuals ... and are personally responsible for such obligations as they incur." *Chatman, supra,* 7 Ohio App.3d at 282, 455 N.E.2d 672. The record contains evidence that defendant Paul Jenkins is the president and sole shareholder of Dan–Ray and carries out the managerial functions of the business. *Exhibit K, Deposition of Timothy Jenkins,* at 5–7. The Court finds this evidence sufficient to establish that defendant Paul Jenkins is the operator of the business and is an "employer" for purposes of ERISA.

### 2. Remaining Issues

Defendants argue that plaintiff has failed to meet his burden of proof because he failed to describe or identify the manner in which the audit for the period September 1998 to October 1999 was completed, the employees for whom contributions were allegedly unpaid, the dates the allegedly unpaid contributions were due, and the manner in which the unpaid contributions were calculated. In regard to plaintiff's claim that the funds are entitled to $24,949.34 in unpaid contributions, liquidated damages, and interest, defendants argue that, although plaintiff refers to several different figures in the memorandum in support of the motion for summary judgment, the sum of these figures does not total the requested amount.

■ The Court notes that, although defendants complain that they do not have information sufficient to enable them to either evaluate or dispute plaintiff's assertions in this regard, they have not utilized the procedures available to them under Fed.R.Civ.P. 56(f). The Court is not persuaded by defendants' complaint in this regard. *See Cacevic v. City of Hazel Park,* 226 F.3d 483 (6th Cir.2000).

The Court next addresses defendants' argument that the figures cited by plaintiff in the memorandum in support of the motion for summary judgment do not total the sum requested by plaintiff, $24,949.34. Given that the Court concluded that plaintiff was not entitled to the amounts sought in relation to the claim concerning Anthony Pink, the Court must only consider the amounts sought by plaintiff in regard to the allegedly unpaid contributions for the period September 1998 to October 1999. While it is true that plaintiff transposed the numbers comprising one of the figures for liquidated damages, this figure was in regard to the unpaid contributions for Anthony Pink; therefore, defendants' argument is moot.

■ In regard to plaintiff's claim concerning the allegedly unpaid contributions for the period September 1998 to October 1999, defendants also complain that plaintiff failed to proffer evidence identifying the employees on whose behalf contributions were unpaid and the dates of the allegedly unpaid contributions. Defendants' complaints are not supported by the record. Plaintiff presented evidence documenting the names of the employees in question, *Exhibits E Attached to Plaintiff's Memorandum in Support of the Motion for Summary Judgment,* and the dates on which contributions were allegedly due. *Id.* In short, the Court concludes that the undisputed record indicates that plaintiff is entitled to judgment in the principle amounts sought in relation to the unpaid contributions for the period September 1998 to October 1999.

Plaintiff also asks that this Court require defendant Paul Jenkins to timely report the hours worked by each laborer in his employ through the expiration of the collective bargaining agreements and to timely pay the contributions owed to the funds based on those hours. ERISA

clearly authorizes such relief. 29 U.S.C. § 1132(g)(2)(E).

### III. Conclusion

As it relates to the claim that defendant Paul Jenkins failed to make timely contributions for the period of September 1998 to October 1999, the motion for summary judgment is **GRANTED.** Plaintiff is entitled to $4060.75 on this claim. Plaintiff's motion for summary judgment as it relates to Anthony Pink is **DENIED.**

As it relates to the request for injunctive relief, the motion for summary judgment is **GRANTED.**

Plaintiff has also requested that the Court award him reasonable attorneys fees in the amount $3750.00. Although plaintiff's counsel provides affidavits detailing the time spent on this action, he does not distinguish between the time spent on the claim on which plaintiff prevailed, and that on which summary judgment was denied. The parties have ten (10) days in which to supplement their memoranda concerning the issue of attorneys fees.