OPINION
{¶ 1} Narayan Srivastava and Pre-Tec, Inc. are appealing from the grant of summary judgment against it and in favor of the Dayton Power Light Co. claim and against the counterclaim of defendants. The facts of the matter and the rationale of the trial court are set forth in full in its decision and entry granting summary judgment to Dayton Power Light Co. and denying summary judgment to defendants, as follows:
 {¶ 2} "This matter comes before the court upon plaintiff's Motion for Summary Judgment and defendants' Response thereto and upon defendants' Motion for Summary Judgment and plaintiff's Memorandum in Opposition. The court will now render its decision upon the Motions for Summary Judgment.
 {¶ 3} "Plaintiff, Dayton Power Light Company (hereinafter "DPL") sent defendant, Narayan Srivastava (hereinafter "Srivastava"), of Precisions [sic] Patterns, 520 East First Street, Dayton, Ohio, a Letter of Agreement to confirm participation in DPL's Energy-Smart Heating Program. In the Letter of Agreement DPL offered Precision Patterns assistance towards the conversion in the amount of $2,500.00. Srivastava was advised that by signing the Letter of Agreement he agreed to its conditions. On December 28, 1995, Srivastava signed the Letter of Agreement as President of Precision Patterns.
 {¶ 4} "DPL had also sent Srivastava, as contact for Precision Patterns, an Energy-Smart Heating Program form on converting the existing steam heat to gas service. Srivastava signed the form as the Customer on January 28, 1995. The form advised that, by signing, the customer agrees to the terms of the program.
 {¶ 5} "The form contained a Competitive Bid Summary and Project Verification. The Competitive Bid Summary described the conversion and advised that the total due would be $9,500.00. Payments of $2,850.00 were due on February 1, 1997, June 1, 1997, and October 1, 1997, with a $950.00 discount given on December 1, 1997. The Project Verification advised that the steam service was disconnected and the coupon check issued on April 23, 1996 and the equipment was installed on June 7, 1996. There was an additional note on the form that the customer must be permanently disconnected from steam by June 1, 1996.
 {¶ 6} "DPL did not receive payment for the conversion and brought a Complaint for $9,500.00 against defendants Srivastava and Pre-Tec Inc. based upon breach of contract, fraud, alter ego, and unjust enrichment. In addition to the $9,500.00, statutory and post-judgment interest and costs, DPL is requesting punitive damages and attorney fees. Copies of the Letter of Agreement and the Energy-Smart Heating Program form were attached to the Complaint as Exhibits A and B.
 {¶ 7} "In their Answer, the defendants denied the allegations in the Complaint and Counterclaimed that DPL wrongfully and fraudulently induced them into an arrangement to convert the heating system from steam to gas. DPL answered the Counterclaim by denying the allegations and requesting attorney fees and sanctions because the allegations are frivolous.
 {¶ 8} "DPL made a Motion for Summary Judgment pursuant to Civ.R. 56 on its claim for breach of contract. It claims that there is no genuine issue of material fact, it is entitled to judgment as a matter of law, and, when viewing the evidence most strongly in favor of the defendants, reasonable minds can only come to a conclusion against them. The Depositions of Srivastava taken on August 15, 2000 and August 7, 2001 were attached in support of the Motion.
 {¶ 9} "In the Motion, DPL states that it is entitled to judgment as a matter of law against defendant Srivastava in his individual capacity. DPL asserts that Srivastava executed the Letter of Agreement as President of Precision Patterns on December 28, 1995, two years after Precision Patterns Inc. was dissolved. After it was dissolved, Srivastava purchased the assets of Precision Patterns Inc. and never indicated to DPL that he was acting on behalf of Pre-Tec Inc. DPL claims that a corporate officer's signature must disclose the name of the corporation or the signatory himself will be held personally responsible. GundBusiness Enterprises, Inc. v. Duffett (July 22, 1999), Cuyahoga App. No. 98CVF01749, unreported, 1999 WL 528203.
 {¶ 10} "DPL alleges that Srivastava continued to do business in the name of the defunct corporation Precision Patterns, which is prohibited under R.C. 1701.88. R.C. 1701.88 provides that once a corporation loses its corporate charter, it `. . . shall cease . . . business and shall do only such acts as are required to wind up its affairs . . . .' Officers who continue to do new business do so at their own risk and are personally responsible for the obligations they incur.Chatman v. Day (1982), 7 Ohio App.3d 281, 455 N.E.2d 672.
 {¶ 11} "In their Response to DPL's Motion for Summary Judgment, defendants argue that DPL is not entitled to judgment against Srivastava in his individual capacity. Defendants state that Srivastava was not conducting business in the name of a defunct corporation. They do not dispute that Precision Patterns Inc. ceased to exist after November 1993 or that Pre-Tec Inc. purchased the assets of Precision Patterns Inc. Instead, they claim that after the purchase, Pre-Tec Inc. created a division named Precision Patterns. They further claim that when Srivastava entered the agreement with DPL, he was acting as President of Pre-Tec Inc., which was a valid corporation containing the division Precision Patterns. Defendants argue that they never held Precision Patterns out to be a corporation and all documents containing the name Precision Patterns do not reflect it as a separate corporate entity.
 {¶ 12} "Defendants also argue that DPL breached the contract when it failed to complete the conversion project by June 1996 and that the conversion was not complete by October 1996, when Pre-Tec Inc. ceased operations. Defendants claim this material breach relieves them of any obligation under the agreement. They further claim that to award DPL judgment would be unjust enrichment as Pre-Tec Inc. received no benefit from the conversion and DPL already benefits from revenue generated from the existing occupant.
 {¶ 13} "Defendants moved for Summary Judgment, claiming, as a matter of law, that Srivastava cannot be sued in his individual capacity and Pre-Tec Inc. cannot be sued in its corporate capacity. First, defendants assert that Srivastava cannot be sued in his individual capacity because they have supplied evidence showing that he was the President of Pre-Tec Inc. and Pre-Tec Inc. was a functioning corporation at the time the DPL contract was signed.
 {¶ 14} "Second, they assert that the articles of incorporation for Pre-Tec Inc. were cancelled by the State of Ohio on November 16, 1999 and Pre-Tec Inc. filed for bankruptcy. [See Plaintiff's Exhibit A(2) and page 7 of Srivastava's August 15, 2000 Deposition.] Defendants claim that since Pre-Tec Inc. is no longer an existing business entity, DPL is precluded from bringing an action against it.
 {¶ 15} "In its Memorandum in Opposition, DPL points out that the articles of incorporation were cancelled for failure to pay taxes and an Ohio corporation dissolved for failure to pay taxes may still be sued.Stychno v. Ohio Edison Co. (N.D.Ohio. 1992), 806 F. Supp. 663, n5. DPL also points out that Srivastava failed to disclose the identity of Pre-Tec Inc. and there is no evidence that DPL knew Srivastava was contracting on behalf of Pre-Tec Inc.
 {¶ 16} "The court finds that the evidence shows Srivastava contracted for the conversion service on behalf of Precision Parts [sic] [Patterns]. Defendants presented copies of documents showing that Precision Parts [sic] was a division of Pre-Tec Inc., but these documents were not part of the business dealings with DPL. In his Deposition of August 15, 2000, Srivastava stated that Precision Parts [sic] was the marketing name used by Pre-Tec Inc., that he could not recall if he ever advised DPL that he was acting on behalf of Pre-Tec Inc., and that he owned 100% of Pre-Tec Inc.
 {¶ 17} "The case of James G. Smith Assoc. Inc. v. Everett (1981), Ohio App.3d 118 addresses the issues at hand. In that case, Everett contracted with James G. Smith Assoc. Inc. to perform advertising services for his business `The Clubhouse.' The Clubhouse was not a corporation but was a registered trade name for Dale F. Everett Company Inc. There was evidence that James G. Smith Assoc. Inc. thought it was dealing with a corporation; however, there was no evidence that it knew it was really dealing with Dale F. Everett Company Inc. Dale F. Everett Company Inc. was unable to pay for the advertising services because a bank took possession of all its assets.
 {¶ 18} "The court found that Everett disclosed that he was acting as an agent, but did not disclose the identity of his principal. The court reasoned that James G. Smith Assoc. Inc. should not have to rely wholly upon the credit and integrity of an unknown party. The court held that both Everett and his corporation, Dale F. Everett Company Inc., were liable for the amount due on the contract:
 {¶ 19} "Where the principal is only partially disclosed, i.e., where the existence of an agency is known to the third person, but the identity of the principal is not known, the agent is held to be a party to the transaction and is liable to the third party, as is the agent's principal.
 {¶ 20} "James G. Smith Associates, Inc. v. Everett et al.
(1981), 1 Ohio App.3d 118, paragraph two of the syllabus.
 {¶ 21} "In the case at hand, Srivastava disclosed he was acting as an agent for a corporation but failed to disclose the identity of Pre-Tec Inc. There is no evidence that DPL was aware it was actually contracting with Pre-Tec Inc. Therefore, as a matter of law, Srivastava is personally liable for the amount due on the conversion contract, as is his principal Pre-Tec Inc.
 {¶ 22} "Defendants attempted to raise as genuine issues of fact that plaintiff breached the contract by failing to finish the conversion project by June of 1996 and before October, 1996, when Pre-Tec Inc. ceased operations, and that awarding damages to DPL would be unjust enrichment because Pre-Tec Inc. did not receive the benefit of the conversion. The court finds that the Energy-Smart Heating Program form stated that the equipment was installed on June 7, 1996. Defendants have not produced any evidence showing DPL did not complete the conversion by that date or pursuant to their agreement.
 {¶ 23} "The court finds that DPL has shown there are no genuine issues of material fact and it is entitled to judgment as a matter of law against both defendants for breach of contract. DPL failed to show it is entitled to punitive damages or attorney fees. The court finds that defendants failed to show that they are entitled to judgment as a matter of law or that any genuine issues of material fact exist.
 {¶ 24} "Both parties requested summary judgment upon defendants' Counterclaim. The court finds that defendants failed to produce any evidence supporting their claim that they were fraudulently induced into the conversion and that plaintiff intentionally caused them emotional or any other kind of distress. Plaintiff produced evidence showing that defendant Pre-Tec Inc. no longer exists and has no standing to bring the Counterclaim. Plaintiff also produced Srivastava's Deposition of August 7, 2001 where he stated that DPL has not caused him personal injury or distress other than by filing this lawsuit. (See pages 10-11).
 {¶ 25} "The court hereby DENIES summary judgment to the defendants and GRANTS SUMMARY JUDGMENT on the Complaint and Counterclaim to plaintiff, DPL. Judgment is awarded to plaintiff Dayton Power and Light Company and against defendants, Narayan Srivastava and Pre-Tec Inc., in the amount of NINE THOUSAND FIVE HUNDRED DOLLARS ($9,500.00), plus statutory interest at 10% per annum and costs.
 {¶ 26} "* * *
 {¶ 27} "JUDGE DANIEL G. GEHRES"
 {¶ 28} On appeal, the defendants bring the following five assignments of error:
 {¶ 29} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING PLAINTIFF-APPELLEE'S MOTION FOR SUMMARY JUDGMENT AS THERE WERE GENUINE ISSUES OF MATERIAL FACT THAT REMAINED TO BE LITIGATED.
 {¶ 30} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING DEFENDANT NARAYAN SRIVASTAVA INDIVIDUALLY LIABLE TO PLAINTIFF-APPELLEE.
 {¶ 31} "III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FINDING THAT SRIVASTAVA FAILED TO DISCLOSE THE IDENTITY OF PRE-TEC, INC.
 {¶ 32} "IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY GRANTING SUMMARY JUDGMENT BEFORE ALL DISCOVERY MATTERS HAD BEEN COMPLETED AND/OR RESOLVED.
 {¶ 33} "V. PUBLIC POLICY REQUIRES PUBLIC UTILITIES BE HELD TO DIFFERENT STANDARD THAN OTHER BUSINESS ENTITIES DUE TO MONOPOLISTIC CHARACTER AND INTEREST IN THE PUBLIC GOOD."
 {¶ 34} We have examined the entire record in this case, including depositions, and we find that it fully supports the decision of the trial court on both the facts and the law. The first three assignments of error were covered by the trial court's decision. We hereby adopt and approve the trial court's decision as our own.
 {¶ 35} As to the fourth assignment of error, the defendants made no attempt to pursue discovery after the plaintiff filed its motion for summary judgment. The defendants could have moved the court under Civ.R. 56(F) for a continuance to permit discovery to be had. They did not and, therefore, waived any further discovery.
 {¶ 36} As to the fifth assignment, the defendants cite no authority, nor do we know of any, for this novel proposition that a public utility, pursuing its ordinary business transactions by contract, must be held to a "different standard then [sic] an ordinary business enterprise." Appellants' brief at 10. Appellants do not tell us what this "different standard" should be, nor how it would presumably help them. This assignment is of no consequence.
 {¶ 37} The five assignments of error are overruled, and the judgment is affirmed.
FAIN, J. and GRADY, J., concur.