No. 27,497.

W. H. Davis, *Appellant,* v. A. W. Rolley, *Appellee.*

(257 Pac. 746.)

SYLLABUS BY THE COURT.

Bills and Notes — *Consideration — Optional Purchase of Stock — Defense to Note in Hands of Purchaser After Maturity.* Where stock in a corporation is delivered to a party who gives his notes therefor to the company and at the same time enters into a contract with the company whereby he "had an option to take the stock within six months" and "had six months to take it [the stock] or leave it alone," and he does return the stock within six months, *held,* that such contract is an option rather than agreement to repurchase and constitutes a good defense against such notes indorsed to plaintiff after maturity.

Appeal from Jackson district court; Martin A. Bender, judge. Opinion filed July 9, 1927. Affirmed.

*D. R. Hite* and *M. D. Freidburg,* both of Topeka, for the appellant.
*E. R. Sloan,* of Holton, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This is an action upon two notes given by appellee to the Scott Weighing Machine Company, one for $2,200, dated June 10, 1921, and the other for $1,200, dated November 7, 1921, the former payable in six months after date and the latter in five months after date. The petition alleges that they were assigned by the Scott Weighing Machine Company to the Merchants National Bank of Topeka and by the Merchants National Bank of Topeka to the appellant. The appellee in his amended answer alleges that the notes were given by virtue of a written agreement entered into by him and the Scott Weighing Machine Company on June 10, 1921,

Bills and Notes, 8 C. J. p. 739 n. 84. Corporations, 14 C. J. pp. 508 n. 38, 509 n. 42, 48 new. Sales, 35 Cyc. p. 56 n. 56.

whereby he was offered thirty-four shares of capital stock of said company for $3,400, and was to have six months in which to determine whether he would purchase and hold it or return it to the company, and in case it was returned to the company within six months the promissory notes were to be delivered to him. A reply was filed to the amended answer denying the right of the representative of the company who negotiated with the appellee to enter into such a contract, pleading estoppel on account of the payment and receipt of the dividend on April 25, 1921, and because that prior to July 21, 1924, the company became insolvent, and its assets and affairs were placed in the hands of a receiver. Trial was had to a jury in the district court of Jackson county, evidence introduced, and a general verdict and finding in favor of the appellee, and special findings to the effect that the notes were not indorsed until after maturity, and that a written contract or agreement regarding the stock was entered into between the parties. Motion for new trial was overruled and judgment rendered for defendant appellee.

Upon appeal contention is made that certain instructions requested were not given, and that the trial court erred in admitting over objection certain testimony regarding the contract referred to. With reference to the failure to give the instructions as requested this court is at a disadvantage by not having before it the instructions which were given by the court, which may possibly embody the substance of the instructions requested. The other error complained of has reference to the admission of testimony concerning the written contract alleged in the amended answer to have been made between Charles D. Scott, for the Scott Weighing Machine Company, and the defendant or appellee herein, A. W. Rolley. Under the pleadings the contract referred to became a proper issue in the case, and whether or not Charles D. Scott, who executed it for and on behalf of the company, had authority to do so becomes a question which must be determined from the testimony so introduced. Charles D. Scott was the secretary and treasurer of the Scott Weighing Machine Company, and the evidence shows he was selling the stock of the Scott Weighing Machine Company with the knowledge and consent of W. H. Davis, appellant herein, who was during most of the time covered by the evidence in this case the president of the said company, although it is shown Scott may not have been selling the stock under the direct supervision and direction of the president, but with his full knowledge and consent.

The evidence further shows that the written contract referred to in the amended answer and found by the jury to have been executed between the parties, provided in substance that Rolley "had six months to take it [the stock] or leave it alone," and "that he [Rolley] had an option to take the stock within six months." There was a conflict of testimony as to there being a written agreement, but the jury found that there was an agreement in writing as alleged in the amended answer. The evidence further shows that said written contract was lost, and for that reason the witnesses were permitted to tell of its contents. Their testimony further showed what the contract said was to be done with the stock and the notes after Rolley decided whether or not he would purchase the stock. The evidence further shows that at the time of the making of the written contract the stock was in fact delivered to Rolley and the notes were in fact delivered to Charles D. Scott. There was evidence showing that the notes were not indorsed by anyone or to anyone until long after their maturity. The evidence further shows that within six months from June 10, 1921, Rolley returned the stock to Mr. Scott and demanded the return of his notes, and Mr. Scott accepted the stock and agreed that "he would fix the matter up."

Since the jury found there was a written contract between the parties at the time of these negotiations, June 10, 1921, it becomes necessary to consider all the evidence we have as to the contents of such written contract shown to have been lost and to place a construction upon it. Under all the evidence what does it reveal as the intention of the parties thereto? Is it a subscription to the stock, a purchase of the stock, or an option to purchase it? The distinction between subscription and purchase is given in 14 C. J. 508, as follows:

"A subscription to the capital stock of a corporation after its organization must be distinguished from a sale of shares by it. As we have just seen, subscribers to the capital stock of a corporation are, properly speaking, those who on the formation of the corporation or afterward mutually agree to take and pay for the shares of its capital stock. A purchase of stock, on the other hand, is where an individual, after the organization of the corporation is completed, makes an independent agreement with the corporation itself to purchase shares of stock from it at a stipulated price. Whether a particular contract is a contract to purchase stock in a corporation or a contract of subscription to its capital stock is a question of construction, to be determined from the intention of the parties ascertained from the contract itself and the law in force applicable to the subject matter. A purchase of shares, if fully

Davis v. Rolley.

executed, will make the purchaser a stockholder, but it does not make him a subscriber; and the rules governing subscriptions and sales of shares are different."

The evidence does not warrant a construction of this contract as being one for a subscription or a purchase. The fact that the stock was written up and delivered and the notes were executed and delivered at the time of the negotiation is the strongest kind of evidence in favor of its being a purchase. But that is wholly inconsistent with the substance of the contract, and inconsistent with the thought of a contract being necessary. If the delivery of the stock and notes had its full import a contract for any purpose whatever concerning the purchase would have been futile. We must at least assume that two business men joining in a contract had the intention of expressing something therein and thereby that was not otherwise sufficiently or satisfactorily expressed. If they intended the transaction to be a purchase it needed nothing more than the delivery of the stock and notes. To meet their intention they thought something more was needed. What could it be? The appellant says it was to bind the company to repurchase the stock, and the appellee in his answer in one place uses the word "repurchase," but we think the evidence does not support that view of the transaction. Rolley didn't know whether he wanted the stock or not. He needed time to decide. The company was apparently willing to give him time. So he by the terms of the contract was to decide in six months whether he would "take it or leave it alone." We think it is more nearly an option given to him than a subscription being made by him with agreement to repurchase.

"An option is a continuing offer or contract by which the owner stipulates with another that the latter shall have the right to buy the property at a fixed price within a certain time." (35 Cyc. 56.)

We are inclined to agree with the contention of the appellant that an agreement by a corporation to repurchase its stock may not be binding upon it, but if the contract is merely an option to purchase, the restriction imposed by the decisions cited by the appellant will not control. Neither do we think the alleged payment and acceptance of a dividend will work an estoppel, because if paid and received it was not during the time covered by the contract or while the appellee had the stock in his possession.

The judgment is affirmed.