THE STATE, EX REL. CULLITAN, PROSECUTING ATTORNEY,
v. STOOKEY ET AL.

(No. 22409—Decided May 11, 1953.)

*Mr. Frank T. Cullitan,* prosecuting attorney, *Mr. Ralph Vince* and *Messrs. Jones, Day, Cockley & Reavis,* for relators.

*Mr. Wilbert J. O'Neill* and *Mr. R. J. Newton,* for respondents.

Hurd, P. J.   On December 7, 1951, relator instituted in this court an original action in quo warranto (under Section 12318, and related sections of the General Code) asking for a judgment of ouster against Donald H. Thorburn, claiming to hold office as a director of The Gas Machinery Company, an Ohio corporation.

The controversy relates to the voting rights of a certain block of 200 shares of stock of the company, which rights are claimed both by Joseph C. Calhoun, Jr., as trustee, who supports the relator in this suit, and by Kenneth W. Stookey, one of the respondents, who supports Donald H. Thorburn, the principal respondent.

Upon the issues being made by appropriate pleadings, the parties made application to this court for appointment of a special commissioner to conduct hearings and submit to the court in writing findings of fact and conclusions of law, the court reserving full power of review.

Pursuant to such order, Paul J. Bickel was appointed special commissioner, hearings were had and testimony was presented on both sides, whereupon the special commissioner filed his report which contains an analysis of the pleadings, together with his findings of fact and conclusions of law, and, finally, a recommendation that judgment be entered in favor of respondent Thorburn, denying an order to oust him as director, and sustaining his right to occupy the office of director.

Thereafter, briefs were filed by the respective parties, extended oral arguments were heard, and we come now to a decision on the motion to confirm the report and recommendation of the special commissioner.

There is no serious dispute as to the facts, but there is serious dispute as to the conclusions of law. Therefore, we include herein a statement only of such facts and parts of the commissioner's report as are necessary to indicate the reasons for our decision.

On June 24, 1948, The Gas Machinery Company, through the unanimous action of its board of directors (Stookey not voting) authorized Stookey to purchase 200 shares of its treasury stock at $225 per share, or $45,000; such amount to be paid over a period of 10 years. Stookey gave a promissory note for $45,000 to the company, bearing interest at the rate of two percent per annum, maturing in 10 years, and the company issued certificate No. 105 to Stookey for the 200 shares of stock. The note was to be secured by the company retaining possession of the stock certificate so issued to Stookey, together with a stock power conveying (if certain requirements of the purchase were not complied with) the 200 shares or part thereof back to the company. No formal pledge agreement was entered into, and, by resolution, it was provided that issuance of the 200 shares gave Stookey the immediate

right to vote such shares and receive dividends on the entire number. However, this transaction was not one for an absolute purchase but was a continuing offer on the part of the company to authorize and help Stookey to purchase the stock upon the following conditions:

1. That he remain with the company.

2. That if he should die, or leave the company, before the expiration of the 10-year period (prior to the full payment of such note) the note should be cancelled, and he or his estate should receive as many full shares at $225 per share as would most nearly equal the total of such principal payments paid.

3. That if still with the company at the end of the 10-year period, and if such note is not paid in full, Stookey should receive as many full shares as the payments theretofore made would most nearly equal the total of such principal payments; the balance of the note to be cancelled by the company.

Concerning this transaction, the report of the special commissioner contains the following comments under the heading of conclusions of law:

"The first question to be considered in this case is whether or not there is in issue the question whether the transactions between the company and Stookey under date of June 24, 1948, had the legal effect of vesting in Stookey the immediate ownership of the 200 shares, the voting rights in respect of which are in dispute in this case. The transactions in question are evidenced by the resolution adopted by the board of directors on that date (plaintiff's exhibit 11) Stookey's promissory note of the same date given to the company (plaintiff's exhibit 13) stock certificate No. 105 (plaintiff's exhibit 15) issued by the company in Stookey's name, and the stock power (plaintiff's exhibit 18) delivered by Stookey to the company in connection with his re-delivery to the company of stock

certificate No. 105. As hereinafter stated, these transactions may merely have resulted in the granting by the company to Stookey of an option, without consideration, to purchase 200 treasury shares of the company. However, at the hearing before the commissioner and in the briefs thereafter filed with the commissioner, both sides took the position that the transactions above mentioned, resulted in a sale consummated on June 24, 1948, by the company to Stookey, of 200 treasury shares of the company at $225 per share, that payment for the shares was made by Stookey's note in the principal sum of $45,000 dated June 24, 1948, maturing by its terms ten years from date and bearing interest at the rate of two per cent per annum; that said note was secured by the pledging by Stookey with the company of the shares so purchased from the company and that upon the happening of certain events, Stookey, or his estate, would be entitled to receive delivery of a certificate representing the number of shares paid for and the company would reclaim or 'recapture' the shares not finally paid for by credits on the note.

"Both sides assumed that from and after June 24, 1948, dividends were properly payable to Stookey on the 200 shares and that the shares could be voted, the only dispute being as to whether Stookey had transferred such voting rights to Calhoun.

"Plaintiff, in his brief herein filed, expressly disclaims any advantage that might result from holding that the transactions resulted only in the granting of an option to Stookey. * * *

"Likewise, in the brief for Stookey, Steinwedell, Thorburn, and the company, defendants * * * it is contended that the transactions here under consideration resulted in an immediate sale and that the 200 shares have voting rights.

"The question therefore arises whether the court should make an independent determination of the legal effect of the transactions in question, so far as the validity of the issuing of the 200 shares to Stookey is concerned, regardless of the fact that the parties hereto have tendered no issue on that point. If, in spite of the apparent agreement of all parties to this suit that the 200 shares were actually sold to Stookey on June 24, 1948, the court decides that it is necessary to determine that question *sua sponte,* then the following are my legal conclusions in respect thereto:

"1. The resolution (plaintiff's exhibit 11) imposes no obligation on Stookey to purchase any of the 200 shares. While the resolution provides that he shall give a note for the entire purchase price, and the note so given on its face is an unqualified obligation to pay, the resolution and the note must be considered together, and so taken, the note becomes illusory and of no effect, because paragraph 2 of the resolution provides that if, at the end of the ten-year period, full payment of the note has not been made, the note shall be cancelled and returned to Stookey, and the company shall then deliver to him shares in a number theretofore paid for by him at the price of $225 per share, it being implied that the other shares revert to the company. A similar provision applies in the event of his death or his ceasing to be affiliated with the company prior to full payment of the note. Thus, Stookey need never pay the note and the company cannot enforce it against him. *Davis* v. *Rolley* [124 Kan., 132], 257 Pac., 746 (Kans.), is a similar case.

"2. The provision in the note for payment of interest is without effect, because it was put in there on the assumption that the note imposes an obligation on Stookey.

"3. As Stookey did not become obligated to pur-

chase any of the shares, there was no consideration for delivering the shares to him, he was not entitled to the shares, and the stock certificate issued to him was without legal effect. The last sentence of Section 8623-22 of the General Code as it stood prior to the amendment thereof in 1949, is applicable:

" '*Promissory notes, drafts or obligations, of a subscriber or purchaser, shall not be accepted in payment for shares, nor shall shares be issued for future services.*' (Emphasis ours.)

"Even if the note were an obligatory one, the quoted sentence would be applicable. For note on this subject, see 58 A. L. R., 708.

"4. Section 8623-36 cited by defendants, which authorizes the sale of shares to employees, uses the terms 'sale' and 'payments' in their ordinary sense, and payment by means of a note which is not obligatory does not constitute payment within the meaning of that section.

"5. The shares in question, therefore, continued to be owned by the company as treasury shares and no dividends would be payable thereon, and no one could vote them.

"6. In the event that from time to time Stookey made payments on account of the principal of the note, such payments were merely payments on account and would not result in the immediate purchase and ownership by him of any shares, this for the reason that the resolution provides that in three cases, namely, his death, his ceasing to be affiliated with the company, or the expiration of ten years without having made full payment of the note, the company shall deliver shares to him to the extent paid for, which provisions seem to exclude an obligation on the part of the company to make deliveries of shares piece-meal from time to time.

"7. The shares still being owned by the company, the total number of shares outstanding at the time of the shareholders' meeting held on November 30, 1951, was 857 and not 1057, and neither Stookey nor Calhoun could vote the 200 shares. It follows from this that the motion to remove the board was carried by the vote of 436 shares cast in favor thereof as against 421 shares cast against.

"8. It also follows that if the board was removed as above mentioned, then the directors elected at the meeting were Steinwedell, Stookey, Calhoun, Kyle and Knochel, and that the 1000 votes (based on the 200 shares) cast by Stookey in favor of Thorburn were without effect, and therefore judgment should be entered ousting Thorburn from office. * * *.

"The foregoing conclusions of law, if followed by the court, would be dispositive of this case and there would not remain any issue as to whether the 200 shares were deposited under the voting trust agreement, or whether irrespective of such deposit, Calhoun became vested with the voting rights thereof."

In the opinion of this court, the foregoing conclusions of law are sound and necessarily dispositive of the issues in this case. The transaction of June 24, 1948, whereby a promissory note was delivered and accepted in payment for 200 shares of stock, was in direct violation of the provisions of Section 8623-22, General Code, and could not, and did not result in a consummated sale as of that date. This must be true, because the transaction purported to give the purchaser, by a conditional promissory note, dividends and voting rights in a certificate of stock which, by reason of the prohibitory provisions of the statute, he did not then lawfully acquire and which for the same reason he does not now own and which, due to conditions subsequent, he may never own. The special com-

missioner, in his report, recommends that this case shall not be decided on the basis of such conclusions for the reason that the parties in interest have considered the transaction of June 28, 1948, as resulting in a consummated sale and have considered the promissory note as constituting the purchase price of the shares subject to conditions subsequent and, further, because the shareholders are not questioning the lack or inadequacy of the consideration therefor, and because at annual meetings of the shareholders, no shareholder objected to the voting of the shares as such, and, finally, because at the hearing before the special commissioner, neither side tendered any issue on the validity of the issuance of these shares to Stookey and the payment of the dividends thereon.

In our opinion, these considerations are not valid reasons for ignoring the plain and unambiguous provisions of the statutes of Ohio enacted for the purpose of regulating and controlling the issuance of and payment for corporate shares.

So far as we are able to ascertain, the constitutionality, or the validity of this provision has not been questioned in any authoritative Ohio cases. However in other jurisdictions, under statutes forbidding the issuance of stock except for money paid and property received, a note given in payment for corporate stock does not constitute "money paid" or "property received" and is not a good consideration for the issuance of stock according to the majority rule. See Annotation, 58 A. L. R., 708, *supra*, and cases therein cited.

However, as we view it, there is no good reason to analyze or discuss to any extent decisions of other jurisdictions in view of the plain and specific prohibitory language of the Ohio statute.

It is fundamental that a corporation, being a mere

creature of the statute, can act in no other manner than that prescribed by the corporate laws of the state, and cannot be permitted to disregard the absolute and manifest provisions contained therein. It is also of more than passing interest to note that when Section 8623-22, General Code, was amended, effective September 9, 1949, paragraph 3 thereof again contained the provision that promissory notes, drafts, or other obligations of a subscriber or purchaser shall not be accepted in payment of shares.

The parties *inter se se* for reasons of their own may have chosen to act without regard to the plain provisions of the statute. But when the jurisdiction of a court of law is invoked, it is fundamental that the court must follow and apply the law. It necessarily follows, therefore, that we may not validate by judicial sanction or decree a transaction which is unenforceable for want of consideration in violation of law.

Quo warranto is an extraordinary remedy, sometimes called a prerogative writ, designated in Section 12303, General Code, as a civil action. It is an action at law and not in equity and we must be governed in our judgment by the legal principles so clearly applicable to the facts in issue.

For the reasons stated, the motion to confirm the recommendation of the special commissioner that judgment be entered in favor of Thorburn and denying an order ousting him as a director and sustaining his right to occupy the office of director is overruled, and an order of ouster is allowed as prayed for.

*Judgment accordingly.*

Kovachy and Skeel, JJ., concur.