[Cite as *Blough v. Smythe Cramer, Co.*, 2012-Ohio-2373.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

JOSEPH BLOUGH dba WILLARD
INVESTMENT GROUP, INC., et al.

      Appellants

      v.

SMYTHE CRAMER, CO., et al.

      Appellees

C.A. No.     25913


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2010-10-7151

DECISION AND JOURNAL ENTRY

Dated: May 30, 2012

WHITMORE, Presiding Judge.

{¶1}    Plaintiff-Appellants, Joseph Blough d/b/a Willard Investment Group, Inc. ("Willard Inc.") and Elegant Homes, Inc. ("Elegant Homes"), appeal from a judgment of the Summit County Court of Common Pleas dismissing their claim for lack for standing.  We affirm.

I

{¶2}    In 2003, Joseph Blough incorporated Willard Inc.  In January 2007, the Ohio Secretary of State notified Blough that it had cancelled Willard Inc.'s articles of incorporation for its failure to either file or pay its corporate franchise taxes.  Several months later, Blough contacted Tatiana Schneider, a real estate agent with Smythe Cramer, and inquired about purchasing three real property lots on Mull Avenue.  Blough asked Schneider to draft a purchase agreement.

{¶3}    A written purchase agreement was executed between Willard Inc., as the buyer, and Ernie Cannan,[1] as the seller.  At closing, titles to the properties were transferred from Cannan to Verla Stoller, Blough's daughter.  Several years later the properties were transferred from Stoller to Elegant Homes, a business incorporated by Blough in 2008.  Thereafter, Blough discovered that the parcels did not have existing water and sewer connections installed.

{¶4}    Blough d/b/a Willard Inc. and Elegant Homes filed suit against Schneider, Smythe Cramer, the Cannans, and their real estate agent, Exit Angheld Real Estate Group, Inc. ("Angheld").  The complaint was filed by Blough alleging that he was acting as an individual doing business as Willard Inc. when he entered into the purchase agreement.  Willard Inc., the cancelled corporate entity, is not a party to this suit.  The complaint alleged breach of contract, breach of fiduciary duties, fraud, and negligent misrepresentation.  Several months after the lawsuit was filed, Blough reported Willard Investment Group ("Willard Group") as a fictitious name.

{¶5}    The defendants all filed motions to dismiss, which the trial court converted to motions for summary judgment.  The court found that the plaintiffs did not have standing to bring the suit and granted the defendants' motions for summary judgment.  Blough d/b/a Willard Inc. and Elegant Homes (collectively "Appellants") now appeal and raise eight assignments of error for our review.  To facilitate the analysis, we consolidate several of the assignments of error.

---

[1] While Ernie Cannan was the only seller listed in the purchase agreement, this suit was brought against Ernie and his wife, Carmen Cannan (collectively "the Cannans").

II

<u>Assignment of Error Number One</u>

THE TRIAL COURT ERRED IN HOLDING THAT PLAINTIFFS/APPELLANTS LACK STANDING TO BRING THIS SUIT.

<u>Assignment of Error Number Two</u>

THE TRIAL COURT ERRED IN HOLDING THAT WILLARD INVESTMENT GROUP, INC., THE CANCELED CORPORATE ENTITY WAS THE PARTY TO THE PURCHASE AGREEMENT, THUS DEPRIVING THE PARTIES TO THIS ACTION STANDING TO SUE.

<u>Assignment of Error Number Three</u>

THE TRIAL COURT ERRED IN HOLDING THAT JOSEPH BLOUGH'S REGISTRATION[2] OF THE FICTITIOUS NAME WILLARD INVESTMENT GROUP DID NOT CONFER STANDING UPON PLAINTIFF/APPELLANT BLOUGH TO BRING SUIT ON WILLARD INVESTMENT GROUP'S BEHALF.

<u>Assignment of Error Number Four</u>

THE TRIAL COURT ERRED IN HOLDING THAT THE INCLUSION OF "INC." AFTER WILLARD INVESTMENT GROUP RENDERS IT AN ENTITY DISTINCT FROM THE WILLARD INVESTMENT GROUP, PLAINTIFF/APPELLANT JOSEPH BLOUGH'S FICTITIOUS NAME.

**{¶6}** In each of the foregoing assignments of error, Appellants argue that the trial court erred in finding that Blough d/b/a Willard Inc. lacked standing to bring this suit. We disagree.

**{¶7}** This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing

---

[2] While the parties use the term "registration," the statute uses the term "report" when referring to fictitious names. *See* R.C. 1329.01(D). To avoid confusion, we follow the language of the statute.

such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶8}  Civ.R. 17(A) requires lawsuits to be brought by the "real party in interest."  "To determine whether the requirement that the action be brought by the real party in interest is [met], courts must look to the substantive law creating the right being sued upon to see if the action has been instituted by the party possessing the substantive right to relief."  *Shealy v. Campbell*, 20 Ohio St.3d 23, 25 (1985).

{¶9}  <u>Willard Inc.</u>

R.C. 1701.13(A) provides that "[a] corporation may sue and be sued." A "corporation" is an organization that has been "formed under the laws of [Ohio]." R.C. 1701.01(A).  The failure to pay franchise taxes is grounds for termination of a corporation's charter pursuant to R.C. 5733.20.  That statute also provides, in pertinent part:

"[Upon cancellation of the articles of incorporation,] all the powers, privileges, and franchises conferred upon such corporation by such articles of incorporation or by such certificate of authority shall cease, subject to section 1701.88 of the Revised Code."

R.C. 5733.20; *see also*, R.C. 5733.21. R.C. 1701.88(A) * * * address[es] the powers of a corporation to act after its charter has been terminated:

"(A) * * * [W]hen the articles of a corporation have been canceled, * * * the corporation shall cease to carry on business and shall do only such acts as are required to wind up its affairs, or to obtain reinstatement of the articles * * *."

* * *

R.C. 1701.97 further limits the exercise of a corporation's rights and privileges under its articles:

"No person shall exercise or attempt to exercise any rights, privileges, immunities, powers, franchises, or authority under the articles of a domestic corporation after such articles have been canceled * * * except such acts as are incident to the winding up of the affairs of such corporation * * *."

*Benefit Mgt. Consultants, Inc. v. Gencorp, Inc.*, 9th Dist. No. 17488, 1996 WL 267747, *3 (May 22, 1996).

{¶10} Willard Inc. was incorporated in February 2003. Its articles of incorporation were cancelled by the State of Ohio on January 4, 2007. The articles have never been reinstated. Subsequent to the cancellation of its articles, Willard Inc. entered into a purchase agreement for three parcels of land. It is the purchase of this land that formed the basis for Appellants' complaint.

{¶11} After its articles of incorporation were cancelled by the State, Willard Inc. was only permitted to do such acts as necessary to wind up its affairs or to reinstate its articles. *See* R.C. 1701.88. When Willard Inc. entered into a purchase agreement for the Cannans' real estate it was doing neither. Blough, however, held Willard Inc. out to be a valid corporation. Therefore, he cannot now argue that the corporation lacked the capacity to enter the contract. *See Callender v. Painesville & H.R. Co.*, 11 Ohio St. 516, 526 (1860). *See also Thomas v. Price*, 133 Ohio App.3d 585, 589 (1st Dist.1999) ("If an organization has held itself out as a corporation, its members and officers are estopped from denying its corporate status."). The trial court did not err in finding Willard Inc. was the party to the contract.

{¶12} Having concluded that Willard Inc. was the party to the contract, we turn to the question of whether the corporation has the capacity to sue while its articles of incorporation are cancelled. Willard Inc. would only have capacity to sue if the suit was related to the winding up of its corporate affairs. *See Benefit Mgt. Consultants, Inc.* at *4. *See also* R.C. 1701.88(A); R.C. 5733.20. Because this suit is based on transactions that occurred after the articles of incorporation were cancelled, it cannot be said that this suit is for the sole purpose of winding up

its corporate affairs. Therefore, the trial court correctly concluded that Willard Inc., the cancelled corporate entity, lacks the capacity to bring this lawsuit.

{¶13} Appellants argue that the trial court erred when it found that Willard Inc. was the party to the contract. Specifically, Appellants argue that if the trial court had properly construed ambiguities in favor of Appellants, as the non-drafting parties, it would not have found Willard Inc. to be the party to the contract. We disagree.

{¶14} "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995), quoting *Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984). Questions of law are reviewed de novo. *Guman Bros. Farm* at 108, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm.*, 64 Ohio St.3d 145, 147 (1992).

{¶15} Willard Inc. entered into a written contract to purchase land from Ernie Cannan on March 23, 2007. The only parties listed in the written contract were Willard Inc. (as the buyer) and Ernie Cannan (as the seller). We conclude that there are no ambiguities as to who the parties are to the contract, and that the trial court did not err when it found Willard Inc. was the party to the contract.

Willard Group

{¶16} Blough reported Willard Group as a fictitious name to the Secretary of State in December 2010. Blough argues that the reporting of this fictitious name permits him to bring a suit in the name of Willard Inc. despite the corporation's articles having been cancelled. We disagree.

**{¶17}** Assuming arguendo that Willard Group is the same as Willard Inc., Blough was not entitled to report Willard Group as a fictitious name. A fictitious name is "a name used in business * * * that is fictitious and that the user has not registered * * *." R.C. 1329.01(A)(2). A fictitious name "does not include the name of record of any domestic corporation that is formed under Chapter 1701 * * * of the Revised Code * * *." *Id.* Willard Inc. is not fictitious. Although the articles of incorporation had been cancelled by the State, the corporation had been properly formed under R.C. Chapter 1701. Thus, Willard Inc., by definition, cannot be a fictitious name under R.C. 1329.01(A)(2).

**{¶18}** To maintain a lawsuit in the corporation's name, Blough should have reinstated the corporation's articles pursuant to R.C. 5733.22. To conclude that Blough may replace the corporation with the fictitious name does nothing but condone a circumvention of the law, which requires him to file and pay corporate franchise taxes. Willard Group and Willard Inc. are not the same entity.

**{¶19}** Because Willard Inc. and Willard Group are not the same entity, Willard Group does not create standing for Willard Inc. Neither does Willard Group have capacity to bring this suit in its own name. Willard Group is not a party to this lawsuit, nor was it a party to the purchase agreement.

Joseph Blough

**{¶20}** Blough argues that he was a party to the contract and, therefore, has standing to bring suit for the breach. The record, however, does not support Blough's argument. Absent Blough's self-serving affidavit, there is no indication in the record that Blough was acting as an individual when he entered into the purchase agreement. The purchase agreement was executed in the name of Willard Inc., the cancelled corporation. Blough knew that Willard Inc.'s articles

had been cancelled when he entered into the purchase agreement. Since Blough held Willard Inc. out to be a valid corporation he cannot now argue the corporation lacked the capacity to enter the contract and substitute himself as a party. *See Callender*, 11 Ohio St. at 526. *See also Thomas*, 133 Ohio App.3d at 589 ("If an organization has held itself out as a corporation, its members and officers are estopped from denying its corporate status.").

**{¶21}** The only parties to the contract were Willard Inc. and Cannan, the seller. Blough does not have standing to sue for a breach of contract because he was not a party to the contract. Appellants' first, second, third, and fourth assignments of error are overruled.

Assignment of Error Number Five

> THE TRIAL COURT ERRED IN HOLDING THAT DEFENDANTS/APPELLEES SMYTHE CRAMER, TATIANA SCHNEIDER, AND EXIT ANGHELD GROUP DID NOT OWE A FIDUCIARY DUTY TO JOSEPH BLOUGH, INDIVIDUALLY, AND/OR THAT SAID DEFENDANTS/APPELLEES DID NOT BREACH THE FIDUCIARY DUTY.

**{¶22}** Appellants argue that the trial court erred when it held that Appellees did not owe a fiduciary duty to Blough individually. We disagree.

**{¶23}** Because this assignment of error also stems from the trial court's decision to grant summary judgment, we incorporate the standard of review set forth in the previous section. Consequently, we review this assignment of error de novo. *Grafton*, 77 Ohio St.3d at 105.

**{¶24}** Appellants argue that Appellees owed Blough a fiduciary duty individually under R.C. 4735.67. R.C. 4735.67 requires a licensed real estate broker to disclose all material facts related to a property to the purchaser. Blough, however, was not the purchaser of the properties at issue; Willard Inc. was. Therefore, Blough is not the proper party to bring a cause of action under R.C. 4735.67 for the purchase of the Mull Avenue lots.

**{¶25}** Next, Appellants argue that Appellees owed Blough a fiduciary duty individually because Willard Inc. was a cancelled corporation when the contract was signed. They argue that the cancellation made Blough, and not the corporation, the party to the contract. We disagree. Again, Blough, knowing Willard Inc.'s articles had been cancelled, signed the land purchase contract in the name of the corporation. Blough did not include his name in the contract.[3] There is no indication in the record that Appellees were aware that Willard Inc.'s articles had been cancelled. Because Blough held Willard Inc. out to be a valid corporation, he cannot now argue the corporation lacked the capacity to enter the contract. *See Callender*, 11 Ohio St. at 526. *See also Thomas*, 133 Ohio App.3d at 589.

**{¶26}** Appellants also argue that the trial court erred in holding that Blough was not owed a fiduciary duty individually because Appellees Angheld and Smythe Cramer did not plead this as an affirmative defense, and the trial court failed to construe evidence in their favor. We disagree. Because the trial court found that Appellants lacked standing to bring the suit there was no need to address affirmative defenses or to construe the evidence in favor of either party. *See Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, ¶27 ("Before an Ohio court can consider the merits of a legal claim, the person or entity seeking relief must establish standing to sue.").

**{¶27}** Lastly, Appellants argue that the trial court erred in holding that Appellants lacked standing despite evidence that Appellees had breached their fiduciary duty prior to the existence of the purchase agreement. Specifically, Appellants argue that the real estate agents owed Blough a fiduciary duty. As discussed above, however, Blough was acting on behalf of

---

[3] We do note that illegible writing exists on the signature line after Willard Investment Group Inc. While this may be Blough's name, none of the parties have made such an argument or raised this as a possible issue.

Willard Inc. and was not individually owed a fiduciary duty. The only party that was owed a fiduciary duty was Willard Inc. Blough, individually, was not owed any fiduciary duty based on that contract or the sale of the properties. Accordingly, Appellants' fifth assignment of error is overruled.

### Assignment of Error Number Six

THE TRIAL COURT ERRED IN HOLDING THAT DEFENDANTS' FRAUD AND MISREPRESENTATIONS STEM FROM THE PURCHASE AGREEMENT.

{¶28} In their sixth assignment of error, Appellants argue that the trial court erred when it held that any fraud or misrepresentation Appellees allegedly made only stemmed from the purchase agreement. Specifically, Appellants argue that Appellees made material misrepresentations to Blough upon which he relied when entering the purchase agreement. The trial court, however, did not conclude that the purchase agreement was the only possible source of a claim. The trial court merely concluded that Blough was acting on behalf of Willard Inc. and not himself individually. We agree with the trial court's conclusion.

{¶29} Blough argues that he was acting individually when he invested $60,000 to purchase the Mull Avenue lots. The record, however, does not support this argument. The purchase agreement was between Willard Inc. and Cannan. The contract made no mention of Blough individually. Because Blough was acting on behalf of Willard Inc., Blough is not the proper party to bring a claim of fraud or misrepresentation. Therefore, Appellants' sixth assignment of error is overruled.

### Assignment of Error Number Seven

THE TRIAL COURT ERRED IN FAILING TO HOLD THAT PLAINTIFF/APPELLANT ELEGANT HOMES, INC., AS THE CURRENT OWNER OF THE PROPERTY, IS A NECESSARY AND INDISPENSIABLE PARY TO THIS ACTION.

**{¶30}** In their seventh assignment of error, Appellants argues that Elegant Homes is a necessary party to the lawsuit and must be joined pursuant to Civ.R. 19(A). Having determined that Appellants do not have capacity to bring the suit, there is no lawsuit to which Elegant Homes must be joined. Appellants' seventh assignment of error is overruled.

### Assignment of Error Number Eight

THE TRIAL COURT ERRED IN DENYING PLAINTIFF/APPELLANTS' MOTION TO VACATE JUDGMENT[.]

**{¶31}** In their eighth assignment of error, Appellants argue that the trial court erred in denying their motion to vacate judgment. Because we have concluded that Appellants lacked standing to bring this suit, the trial court properly denied Appellants' motions to vacate judgment. Appellants' eighth assignment of error is overruled.

### III

**{¶32}** Appellants' eight assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
BETH WHITMORE
FOR THE COURT

CARR, J.
CONCURS IN JUDGMENT ONLY.

DICKINSON, J.
CONCJURRING IN JUDGMENT ONLY.

**{¶33}** The lead opinion has spent several paragraphs addressing whether the corporation Willard Investment Group Inc. had capacity to bring this lawsuit. Willard Investment Group Inc. was not a party to the complaint and Joseph Blough has not argued in his brief that the corporation had capacity to file suit, so discussion of this issue is unnecessary.

**{¶34}** Mr. Blough's argument is that the trial court incorrectly concluded that there was no genuine issue of material fact regarding whether he was a party to the contract. Mr. Blough has noted that, in his affidavit, he asserted that it was he, doing business as "Willard Investment Group," who signed the purchase agreement. According to Mr. Blough, his affidavit creates a genuine issue of material fact regarding whether he had the ability to bring this action.

**{¶35}** Although Mr. Blough asserted in his affidavit that he negotiated the purchase agreement under the name "Willard Investment Group" and presented evidence that he has

reported the fictitious name "Willard Investment Group" to the secretary of state, he brought this action as "Joseph Blough Dba Willard Investment Group, Inc."  He has argued that it is immaterial that the name he reported to the secretary of state does not include "Inc." because the names are indistinguishable for registration purposes.  In support of his argument, he has provided this Court with a web address for the Ohio secretary of state's guidelines regarding name availability.  According to the webpage, "[f]ictitious names are not required to be distinguishable upon the records from any other previously registered name.  However, a fictitious name provides no protection because other registered names are not required to be distinguishable from a fictitious name.  For example, if 'Benny's Ice Cream' is registered as a fictitious name, a corporation would be permitted to register 'Benny's Ice Cream, Incorporated' because the names are not required to be distinguishable."  Ohio Secretary of State, *Guide to Name Availability*, http://www.sos.state.oh.us/SOS/Businesses/businessServices/NamingConflicts.aspx (accessed May 29, 2012).  Contrary to Mr. Blough's argument, the "Benny's Ice Cream" example shows that "Willard Investment Group" and "Willard Investment Group Inc." may co-exist and, therefore, are not just two ways of stating the same name.

{¶36}  Mr. Blough has also argued that, because it was the sellers who prepared the purchase agreement, any ambiguity regarding who the buyer was should be construed in his favor.  While the purchase agreement was printed on Smythe-Cramer-labeled paper, the form contained a number of blank spaces that had to be completed by hand.  There is no evidence in the record regarding who wrote "The Willard Investment Group Inc." in the space for "Buyer."  The agreement, however, was also signed by "The Willard Investment Group Inc." followed by what appears to say "by Joseph Blough."  Although the signature is hard to decipher, Mr. Blough asserted in his affidavit that it was he who purchased the lots.  Because the person who signed

the purchase agreement specifically signed it for "The Willard Investment Group Inc.," there is no question that it was either the corporation Willard Investment Group Inc. or an individual doing business as Willard Investment Group Inc. who entered into the contract.

{¶37} Upon review of the record, I agree that Mr. Blough has not demonstrated that there is a genuine issue of material fact that it was he, doing business as Willard Investment Group, and not the corporation previously registered as Willard Investment Group Inc. or he, doing business as Willard Investment Group Inc., who entered into the purchase agreement. Even assuming it was Mr. Blough, not the former corporation who signed the agreement, because he has not reported his use of the fictitious name "Willard Investment Group Inc." to the Ohio secretary of state, he did not have capacity to sue to enforce the contract. R.C. 1329.10(B); *Benefit Mgmt. Consultants Inc. v. Gencorp Inc.*, 9th Dist. No. 17488, 1996 WL 267747, *4 (May 22, 1996). The trial court correctly granted summary judgment to the defendants.

APPEARANCES:

DAN A. MORELL, JR. and MICHAEL D. SCHMIT, Attorneys at Law, for Appellants.

TRACEY S. MCGURK, Attorney at Law, for Appellees.

DAVID WELLING, Attorney at Law, for Appellee.