[Cite as *Lamancusa v. Big Little Farms Inc.*, 2013-Ohio-5815.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| SAM LAMANCUSA, TREASURER TRUMBULL COUNTY, OHIO, | : | **O P I N I O N** |
| | : | |
| Plaintiff, | : | **CASE NO. 2012-T-0054** |
| | : | |
| - vs - | : | |
| | : | |
| BIG LITTLE FARMS INC., et al., | : | |
| | : | |
| Defendants-Appellees, | : | |
| | : | |
| THE ESTATE OF GENE P. ROSS, et al., | : | |
| | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas.
Case No. 2007 CV 109.

Judgment: Reversed and remanded.


*Daniel G. Keating*, Keating, Keating & Kuzman, 170 Monroe Street, N.W., Warren, OH 44483; and *John D. Falgiani, Jr.*, 8872 East Market Street, Warren, OH 44484 (For Defendants-Appellees).

*Jay R. Carson* and *Robert K. McIntyre*, Wegman, Hessler & Vanderburg, 6055 Rockside Woods Boulevard, Suite 200, Cleveland, OH 44131 (For Defendants-Appellants).


TIMOTHY P. CANNON, P.J.

{¶1} Appellants, Beverly W. Ross and the Estate of Gene P. Ross, appeal from a partial summary judgment in a foreclosure case before the Trumbull County Court of Common Pleas. Appellants seek reversal of the trial court's ruling concerning the

validity of a mortgage they held on real property owned by appellee, Big Little Farms Inc. ("BLF"). Specifically, appellants submit that the mortgage is enforceable even though BLF was not in good standing as a corporate entity when the mortgage was executed.

{¶2} Dale E. Ross and Gene P. Ross were brothers who grew up together in Trumbull County, Ohio. During their early lives, both men developed an appreciation for the breeding and training of race horses. At some point in the 1970s, Dale formed BLF under Ohio law and purchased a tract of land in Trumbull County under the corporate name. Over the years, he developed the property by building stables and a race track for horses.

{¶3} In the early 1980s, Dale failed to pay tax obligations on behalf of BLF. Thus, the Ohio Secretary of State cancelled the company's articles of incorporation. For two decades, Dale took no action to reinstate the cancelled articles of incorporation but continued to transact all business under the "Big Little Farms" name.

{¶4} Gene moved to Michigan and married Beverly. Gene eventually formed Ross Stables, LLC, a Michigan entity that primarily engaged in the business of breeding race horses. As Gene's business began to grow, he and Dale entered into an oral agreement concerning the training of horses. Pursuant to this agreement, Gene transported horses to the Trumbull County property where Dale boarded and trained them. Gene was then liable to Dale for the services rendered.

{¶5} Over the years, Gene advanced funds to Dale to assist in making improvements to the Trumbull County property. In December 2003, Dale, acting in his capacity as president of BLF, signed a promissory note payable to Gene and Beverly. The note stated that, in return for a loan received from Gene and Beverly, BLF promised

2

to pay them the amount of $103,385, plus 2% yearly interest, in monthly payments of $873.18.

{¶6}    In conjunction with the promissory note, BLF granted Gene and Beverly a mortgage on the Trumbull County "horse farm" property, which was still titled in the name of BLF.  Dale signed the mortgage solely in his capacity as president of the corporation.

{¶7}    Within three months of Dale's execution of the note and mortgage, Gene died.  Over the next three years, Dale did not make any monthly payments on behalf of BLF on the underlying debt to Beverly.

{¶8}    In January 2007, the Trumbull County Treasurer filed a foreclosure action in relation to BLF's "horse farm" property.  The treasurer's complaint asserted that BLF was delinquent in the payment of property taxes.  In addition to BLF, the complaint named Gene, Beverly, Dale, and Dale's former wife as defendants.

{¶9}    BLF settled the delinquent tax issue with the county treasurer.  However, before the case could be dismissed in its entirety, Beverly filed a cross-claim against Dale and BLF.  She amended her original pleading in October 2007 and asserted three counts.  First, she alleged that BLF had breached the terms of the promissory note by failing to make any required payments on the loan.  Second, she sought foreclosure of the mortgage.  Third, she sought a determination that Dale was personally liable for the corporate debt under the note.

{¶10} In addition to answering Beverly's cross-claim, Dale submitted a cross-claim against her.  His cross-claim included counts alleging breach of contract, detrimental reliance, misrepresentation, and unjust enrichment.  Under each of these claims, Dale sought to recover boarding and training fees that Gene allegedly failed to

3

pay before his death.  According to Dale, the sum of the unpaid fees was greater than the amount BLF supposedly owed on the promissory note.  Thus, Dale sought to have the unpaid fees offset against any sum owed to Beverly.

{¶11}  The Estate of Gene P. Ross was substituted for Gene after he died.  Furthermore, Dale added Ross Stables, LLC as a "defendant" to his cross-claim.  Dale passed away in December 2011 while the case was pending.  Dale's estate and the administrator of the estate, Meleny Dibell, were substituted as the proper defendants to Beverly's cross-claims.  Upon entering the case, Dale's estate was granted leave to add a fifth claim against Beverly, under which it sought to quiet title.

{¶12}  Within four months of Dale's death, the two sides in the litigation submitted competing motions for summary judgment under Civ.R. 56(C).  Beverly and her husband's estate sought final judgment in their favor on all eight counts of the pending cross-claim.  In addition to responding to Beverly's motion, BLF and Dale's estate moved for partial summary judgment on the issue of whether the promissory note and mortgage should be declared void.  In support of their argument, BLF and Dale's estate contended that BLF did not have authority to execute the note and the mortgage because its articles of incorporation were never reinstated.

{¶13}  In its subsequent entry on the competing motions, the trial court granted partial relief in favor of both sides.  The court held that, as BLF was not an existing corporation when the promissory note and mortgage were executed in 2003, Dale lacked authority to bind the company under those documents.  The court declared the mortgage void and entered judgment in favor of BLF and Dale's estate on its cross-claim to quiet title to the property.  The court further concluded that Dale was personally liable for the loan debt under the promissory note.

4

{¶14} The court further granted summary judgment in favor of Beverly as to the claims filed by Dale's estate for breach of contract, detrimental reliance, and misrepresentation. However, as to the remaining unjust enrichment claim filed by Dale's estate, the court found that genuine issues of material fact remained to be litigated. Finally, the court's entry contained a specific finding under Civ.R. 54(B) that there was no just reason for delay.

{¶15} Appellants' sole assignment of error states:

> The trial court erred by declaring that the mortgage that Appellee Dale Ross granted to Appellant Beverly Ross was void because, when making the grant, the grantor, Dale Ross, purported to act on behalf of Big-Little Farms, Inc., ("Big-Little Farms"), a cancelled corporation. Because Dale Ross held himself out as acting on behalf of Big-Little Farms, he and his Estate are estopped from later seeking to avoid the transaction by denying the corporation's existence.

{¶16} We review a trial court's decision(s) on a motion for summary judgment de novo. *U.S. Bank Natl. Assn. v. Martz*, 11th Dist. Portage No. 2013-P-0028, 2013-Ohio-4555, ¶10, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." Civ.R. 56(C).

{¶17} Appellants argue that appellees were estopped from arguing that Dale lacked authority to bind BLF to the note and the mortgage because Dale held himself out as president of BLF and signed the note and the mortgage in his corporate capacity.

5

{¶18} Initially, we note that the record indicates there were no factual disputes concerning the legal status of BLF and the execution of the underlying promissory note and mortgage. First, the parties agreed that, even though BLF was in good standing as an Ohio corporation when it bought the "horse farm" property in the 1970s, its articles of incorporation were cancelled in the early 1980s. Moreover, no evidence was presented establishing that Dale made any effort to have his company reinstated as a recognized corporation under Ohio law; thus, BLF was not a valid corporate entity when the note and mortgage were executed in late 2003. Second, a review of both documents readily confirms that, in signing them, Dale affirmed he was acting in his capacity as the president of BLF, not in his individual capacity.

{¶19} Nonetheless, the trial court held that Dale lacked the authority to bind the corporation because the corporate articles were cancelled some 22 years before Dale executed the note and the mortgage. As such, the trial court found that reasonable minds could come to but one conclusion: that the mortgage was void as it applied to BLF.

{¶20} When articles of a corporation have been cancelled, as in this case, R.C. 1701.88(A) provides that "the corporation shall cease to carry on business * * *." However, that did not occur in this case. Dale violated this statute by signing the note and the mortgage on behalf of the corporation at a time when he knew the articles had been cancelled. This should not defeat the claim of the person with whom he did business.

{¶21} It is well established that "persons who hold themselves out as a corporation, and act as if they are, in fact, a corporation [ ] are estopped to later deny corporate status, particularly for the purpose of invalidating a contract." *Olde World*

6

*Travel Agency, Inc. v. Ram Publ. Co.*, 8th Dist. Cuyahoga No. 52306, 1986 Ohio App. LEXIS 9707, *1-2 (Dec. 4, 1986), citing *Callender v. Painesville R.R. Co.*, 11 Ohio St. 516 (1860); and *Trumbull Cty. Mutual Fire Ins. Co. v. Horner*, 17 Ohio 407 (1848). In *Callender*, the Ohio Supreme Court stated:

> However mistaken in fact, no person, whether artificial or natural, is permitted to so conduct and represent himself as to induce reasonable men, at his instance, to act upon the truth of such representations in their contracts and dealings with him, and to then deny the truth of such representations, to the prejudice of the party so having relied upon them.

*Id*. at 526. "This would look very much like a man attempting to take advantage of his own wrong to avoid doing what was right, a defense not much favored in law." *Trumbull Cty. Mutual Fire* at 408.

{¶22} A more recent case addressing a similar issue is also persuasive. In *Blough v. Smythe Cramer, Co.*, 9th Dist. Summit No. 25913, 2012-Ohio-2373, an individual attempted to make a claim in his own right, even though he had executed documents in a corporate capacity. The Ninth District stated:

> The purchase agreement was executed in the name of Willard Inc., the cancelled corporation. Blough knew that Willard Inc.'s articles had been cancelled when he entered into the purchase agreement. Since Blough held Willard Inc. out to be a valid corporation he cannot now argue the corporation lacked the capacity to enter the contract and substitute himself as a party.

*Blough* at ¶20. Analogous to the case at hand, *Blough* involved contracts entered into by a person holding himself out to act on behalf of a corporation whose articles had been cancelled. Thus, the Ninth District clarified that an individual who acts in a corporate capacity cannot later defend a claim based on that conduct by asserting a defect in the corporate status. *Id*. at ¶11-15. The doctrine of estoppel bars such an individual from taking advantage of his own misrepresentations.

7

{¶23} In their appellate brief, appellees assert that the problem rests with appellants:

> The fact that Appellants took a mortgage from a tax cancelled corporation is not the fault of Dale Ross; but, is the result of a lack of due diligence on the part of Appellants and/or their attorney. * * * There is simply no evidence that Dale Ross made any affirmative representations as to the status or validity of the corporation at the time that the mortgage was signed in 2003.

{¶24} As established by the record, nothing could be further from the truth. The note was signed by Dale in his corporate capacity. Dale purported to transfer an interest in real estate titled to the corporation by signing over a mortgage from the corporation, which was then currently in title to that same property. It is incredibly disingenuous to suggest it is appellants' fault they did not discover Dale's fraud against them. That might be a defense available to a third party, but not to the individual who made the misrepresentation.

{¶25} The record reflects that although the articles of incorporation had been cancelled, Dale continued to conduct business in the name of, and on behalf of, the corporation as if it continued to exist. Thus, Dale's estate cannot argue that the corporation did not exist because Dale clearly represented that it did. The real estate was titled in the name of the corporation, the documents were all prepared consistent with that ownership, and Dale signed in his corporate capacity. As a result, the defense that Dale lacked authority or capacity to sign the note and the mortgage is unavailable to the estate. Furthermore, the corporation must remain in existence in *some* form, because it held title to the property in question; some act on behalf of the corporation would still be required to properly effect a transfer of title.

{¶26} Appellants' assignment of error has merit. Appellees cannot deny the corporate existence of Big Little Farms Inc. Thus, the trial court erred in finding that reasonable minds could only conclude that the mortgage was void by reason of BLF's status as a cancelled corporation at the time Dale signed the mortgage on BLF's behalf.

{¶27} The trial court's grant of summary judgment with regard to the claim to quiet title is reversed. This cause is remanded for proceedings consistent with this opinion.


DIANE V. GRENDELL, J., concurs,

THOMAS R. WRIGHT, J., dissents with Dissenting Opinion.


_____


THOMAS R. WRIGHT, J., dissents with Dissenting Opinion.

{¶28} In concluding that the mortgage granted on Big Little Farms' property can be enforced by appellants, the majority relies upon a series of relatively recent appellate decisions that stand for the following proposition: if the officers or owners of a business organization represent to outsiders that their entity is a valid corporation, they can later be estopped from denying its corporate status. Upon reviewing statutory provisions that govern the basic process of "winding up" a cancelled corporation's affairs, the majority's reliance upon the cited cases is misplaced. Specifically, the proposition cannot be applied because it directly conflicts with the clear legislative mandate that a corporation shall cease to carry on business after the cancellation of its articles of incorporation and shall do only such acts as to wind up its affairs. Accordingly, I dissent.

{¶29} In Ohio, a corporation is considered "a legal entity created and regulated

9

by statute in derogation of the common law." *Chomczynski v. Cinna Scientific, Inc.*, 1st Dist. Hamilton No. C-010170, 2002-Ohio-4605, ¶9.  In other words, a corporation is "an artificial person, created by the General Assembly and deriving its power, authority and capacity from the statutes." *Union Savings Assn. v. Home Owners Aid, Inc.*, 23 Ohio St.2d 60, 62 (1970).  Given that a corporation is a statutory creation, it can only engage in those acts that are expressly permitted under governing statutes.  *Chomczynski*, at ¶9, citing *State ex rel. Cullitan v. Stookey*, 95 Ohio App. 97, 106-106 (8th Dist.1952).

{¶30} Since 1955, Ohio's general corporation law has been delineated in R.C. Chapter 1701.  This chapter contains provisions controlling all aspects of a corporation's existence, including its dissolution.  Concerning the procedure to be employed when a corporation's articles of incorporation have been canceled, R.C. 1701.88(A) provides:

{¶31} "(A) When a corporation is dissolved voluntarily, when the articles of a corporation have been canceled, or when the period of existence of the corporation specified in its articles has expired, the corporation shall cease to carry on business and shall do only such acts as are required to wind up its affairs, or to obtain reinstatement of the articles in accordance with section 1701.07, 1701.921, 1785.06, or 5733.22 of the Revised Code, * * *, and for such purposes it shall continue as a corporation for a period of five years from the dissolution, expiration, or cancellation."

{¶32} R.C. 1701.88(D) further states that, in winding up the affairs of a canceled corporation, the board of directors can exercise the same powers as they had under its articles of incorporation, including the granting of a mortgage as security.

{¶33} Big Little Farms' articles of incorporation had been canceled for twenty years when Dale Ross executed the promissory note and mortgage on behalf of the corporation.  Moreover, Dale used the obtained funds to make improvements to the

10

"horse farm" property. Therefore, given that the mortgage was not granted as part of "winding up" Big Little Farms affairs, Dale's act was forbidden under R.C. 1701.88(A). Moreover, the mortgage was granted well beyond five years after its articles were canceled.

{¶34} "[T]he public policy behind R.C. 1701.88 is intended to prevent business organizations from continuing to do business under the mantle of state approval where such approval has been revoked." *Mack Construction Devel. Corp. v. Austin Smith Construction Co.*, 65 Ohio App.3d 402, 406 (12th Dist.1989). As a result, a corporate officer cannot rely upon the liability protection of the corporate veil when he continues to transact normal business after the state has nullified the articles of incorporation. *Id.* If R.C. 1701.88(A) is not strictly enforced, it has the effect of encouraging fraud by officers who either knew or should have known that they no longer possess the authority to act as agents for the corporation. *Chatman v. Day*, 7 Ohio App.3d 281, 284 (2d Dist.1982).

{¶35} In *Sheehan v. McRedmond*, 8th Dist. Cuyahoga No. 73358, 1998 Ohio App. LEXIS 5311 (Nov. 5, 1998), the plaintiff loaned $25,000 to an Ohio corporation that, unbeknownst to him, had its articles of incorporation canceled ten months previously. In executing the promissory note, the defendant indicated he was acting in his capacity as the corporation's president. When the debt was not paid in accordance with the note, the plaintiff obtained a judgment against the corporation. Despite this, the plaintiff then filed a separate action against the defendant/president to recover under the promissory note. After the trial court held that the president was personally liable for the corporate debt, he appealed to the Eighth Appellate District. In addition to upholding the finding of personal liability, the appellate court addressed the issue of whether the prior judgment against the corporation was enforceable:

11

{¶36} "The promissory note was signed on October 17, 1995. It is undisputed that [the corporation's] charter was cancelled on December 20, 1994. Under R.C. 1701.88(A), when the articles of a corporation have been cancelled, the corporation must cease doing business and only do the acts required to wind up its affairs or to obtain reinstatement of its articles of incorporation. In this case, [the corporation] was not winding up its affairs when it borrowed the money from [the plaintiff]. In his answer to [the plaintiff's] complaint, [the defendant] admitted that the money was 'utilized in the operation of * * * [corporate] business.' At no time did he ever allege that [the corporation] was engaged in winding up its affairs. Furthermore, there is no allegation that [the corporation] was attempting to obtain reinstatement of its articles of incorporation.

{¶37} "Accordingly, [the corporation] had no authority to borrow the $25,000 from [the plaintiff] and the contract was void as to [the corporation]. Since the note did not constitute a valid obligation of [the corporation], [the plaintiff's] judgment against [the corporation] for the money loaned under the note is also void." *Id.*, at *5-6.

{¶38} The *Sheehan* analysis is readily applicable to the facts of this case. Since the loan from Gene and Beverly was not related to winding up the affairs of Big Little Farms, the promissory note was never valid as to the company. Instead, the note could only be enforced against Dale personally.

{¶39} As to the mortgage, no evidentiary materials were presented showing that Big Little Farms' assets were ever distributed, in accordance with R.C. 1701.88(D)(15), as part of its final dissolution. Accordingly, the company's assets are held in trust until all corporate debts are paid. *Kesselring Ford, Inc. v. Cann*, 68 Ohio App.2d 131, 133 (12th Dist.1980). Thus, when Dale signed the mortgage in 2003, the "horse farm"

12

property belonged exclusively to the company.

{¶40} Because Big Little Farms could not engage in any regular business transactions except in aid of winding up its affairs, the corporation as principal lacked statutory authority to empower Dale as agent to execute the mortgage. Moreover, pursuant to *Mack Construction* and *Sheehan*, Dale could not encumber the corporate property as security for his personal debt.

{¶41} In maintaining that Big Little Farms and Dale's estate should be estopped from relying on the cancellation of the company's articles as a justification for nullifying the mortgage, the majority bases its legal analysis upon two recent appellate opinions: *Blough v. Smythe Cramer, Co.*, 9th Dist. Summit No. 25913, 2012-Ohio-2373 and *Olde World Travel Agency, Inc. v. Ram Publishing Co., Inc.*, 8th Dist. Cuyahoga No. 52306, 1986 Ohio App. LEXIS 9707 (Dec. 4, 1986). Both *Blough* and *Olde World Travel* predicated their holdings upon decisions of the Supreme Court of Ohio from the 19th century: *Callender v. Painesville and Hudson Railroad Co.*, 11 Ohio St. 516 (1860); *Trumbull Cty. Mutual Fire Ins. Co. v. Horner*, 17 Ohio 407 (1848).

{¶42} *Callender* and *Horner* involved situations in which a member or officer of a corporation sought to deny the existence of the corporation even though it had already engaged in business. In *Callender*, the member contended that the corporation did not exist because there was a technical flaw in the original certificate submitted to the state. In *Horner*, the member argued that the corporation dissolved after his fellow members failed to comply with requirements of its charter. Importantly, neither case involved a scenario in which the state canceled the corporate charter or certificate after initially accepting it; i.e., the corporation still existed in the eyes of the state. Moreover, neither opinion cited an applicable statute limiting the corporation's authority to wind up activity.

13

{¶43} Given the specific facts in *Callender* and *Horner*, the "estoppel" analyses in those decisions should not be extended to situations in which a company's articles of incorporation have been canceled. When the state has officially taken action against the corporation, a third party has the ability to protect herself by checking the public records on the matter. Under the scenarios in *Callender* and *Horner*, such an opportunity would not exist. Hence, to the extent that the "estoppel" analyses in *Blough* and *Olde World Travel* are based upon *Callender* and *Horner*, I reject that precedent as controlling.

{¶44} In conjunction with the foregoing, I would further note that there is other Supreme Court case law which, at first blush, would appear to support the majority's conclusion. In *Eversman v. Ray Shipman Co.*, 115 Ohio St. 269, 278 (1926), the Court stated that the cancellation of a corporation's articles does not render all of its ensuing actions void. However, in considering the precedential value of *Eversman*, subsequent courts have emphasized that: (1) the *Eversman* analysis focused upon the interpretation of certain tax statutes; and (2) *Eversman* was decided before the enactment of Ohio's general corporation act, including R.C. 1701.88(A). *See, e.g., Shaw v. Jenkins*, 159 F.Supp.2d 995, 999 (S.D.Ohio 2001). In light of this, the Twelfth Appellate District has concluded that *Eversman* "is inapposite to a situation where the corporate dissolution mandated by R.C. 1701.88 occurs." *Mack Construction*, 65 Ohio App.3d at 405. *See, also, Chatman*, 7 Ohio App.3d at 283, in which the Second Appellate District held that "[t]he provisions in the Corporation Act eliminate the rationale of *Eversman* * * *."

{¶45} The rationale of *Mack Construction* and *Chatman* as to the precedential value of *Eversman* is equally applicable to *Callender* and *Horner*, especially in situations where the state has canceled a corporation's articles of incorporation. Specifically,

14

given that an Ohio corporation is a pure statutory entity, R.C. 1701.88 is always controlling as to the validity of any action taken by a corporation after its articles are no longer in effect.

**{¶46}** If estoppel prevents the corporation from raising the "cancellation" issue, the clear language of R.C. 1701.88 is defeated. Applying estoppel effectively rewrites R.C. 1701.88 to say:

**{¶47}** When the articles of a corporation have been canceled, the corporation may continue to carry on business for infinite duration as if the articles have not been canceled.

**{¶48}** R.C. 1701.88 dictates that appellants' sole remedy for payment under the promissory note is against Dale's estate. By holding that the mortgage is valid and can be enforced against Big Little Farms, the majority has ignored the controlling statute and the relevant case law. The trial court properly applied R.C. 1701.88. I would therefore affirm.